# JANUARY TERM.

## CHARLESTON.

### STATE v. EVANS.

Submitted January 21, 1889.—Decided January 29, 1890.

1. MURDER—AUTREFOIS ACQUIT—DEMURRER.

   The court should sustain a demurrer to a plea of *autrefois acquit*, when the plea shows on its face that the offence for which the pris-

53

oner was formerly tried is separate and distinct from that for which he stands indicted.

2. MURDER—SPECIAL PLEA.

A special plea, which is equivalent to the general issue of "not guilty," may be rejected by the court in a criminal case without error.

3. MURDER—INSTRUCTIONS.

A party has a right to have his instruction given in his own language, provided there are facts in evidence to support it, that it contains a correct statement of the law and is not vague, irrelevant, obscure, ambiguous, or calculated to mislead.

4. MURDER—SELF-DEFENCE.

The principles laid down in *Cain's Case,* 20 W. Va. 679, re-affirmed, as defining on the one hand the circumstances which will excuse the defendant from retreating, and on the other, repudiating the erroneous doctrine, so fruitful of murders and street-fights wherever promulgated, that a mere threat to kill on sight will justify a party, in a civilized community, in slaying the threatener, unless the latter is, at that very time, engaged in some overt, hostile act indicative of immediate and imminent danger to the defendant,

5 MURDER—WITNESS—EVIDENCE.

Since the passage of our statute permitting the prisoner to testify in his own behalf, he is a competent witness in a case of homicide to testify to the state of his own feelings when the fatal act was committed, his testimony to be taken for what the jury may think it worth.

6. MURDER—EVIDENCE—HEARSAY TESTIMONY.

To extend the limits of the admissibility of hearsay testimony so as to include so vague and general a subject as the reputed "influence" of one man over another would be unwarranted by authority or precedent; and the court did not err in excluding such a question.

7. MURDER—EVIDENCE—THREATS.

Evidence of communicated threats is calculated to shed light upon the mental attitude of the prisoner towards the deceased when the homicide occurred; uncommunicated threats are evidence of the mental attitude of the deceased towards the prisoner. Both are admissible.

8. MURDER—SELF-DEFENCE.

The principle laid down in *State* v. *Abbott,* 8 W. Va. 743, 744, reaffirmed.

*R. W. Monroe* and *H. B. Gilkerson* for plaintiff in error.

*Attorney-General Alfred Caldwell* for the State.

LUCAS, JUDGE:

At the May term, 1889, of the Circuit Court of Hampshire county, the prisoner stood indicted for the murder of Jacob Kirby, and on his trial the jury found him guilty of voluntary manslaughter. A motion was made in arrest of judgment and for a new trial, which was argued by counsel, and taken under advisement by the court until on the 14th day of October following. The court overruled the motion, and entered up judgment, and sentenced the prisoner to the penitentiary for two years. On the 4th of November, 1889, a writ of error was allowed by this Court. During the progress of the trial various exceptions were reserved, and at its close, as we have seen, the motion in arrest of judgment and for a new trial was overruled, and exceptions taken by the prisoner to this final action of the court.

The first error assigned by the prisoner is that the court erred in sustaining the demurrer to the defendant's special plea of *autrefois acquit.* This plea is set out at length in the record, but it will only be necessary to state its substance, in order to decide upon the validity of the exception taken to the action of the court. The plea sets out that the crime charged against him in the present indictment is the same felonious act charged against him in a former indictment for the murder of one John S. Hoke, upon which former indictment he had been acquitted. The plea further alleges that the evidence whereby the State can or will attempt to prove the present indictment will be the same as that produced against him on the trial of the former indictment; and the plea then sets out at length the evidence adduced on the former trial, and also that which the plea alleges will be adduced on the pending trial. The plea prays judgment of the court, and that the prisoner may be hence dismissed. The plea was demurred to, the prisoner joined, and the court sustained the demurrer.

The plea alleges, it is true, that there was but one offence, yet the facts stated in the plea clearly establish that the offences charged in the respective indictments were separate and distinct. A case can be conceived where such a plea might be held good. For example, the engineer of a railway train might be charged with negligently and feloniously

causing the death of one passenger in a wreck, and, being tried and found by the jury entirely blameless for the accident, such acquittal might, perhaps, constitute a perfect defence to a subsequent indictment for killing another passenger, who was on the same train. But this case presents no such question. The killing was the result of a separate act in each case, committed under degrees of provocation not necessarily identical, accompanied by apprehensions not necessarily the same. In fine, every element to constitute two separate offences appears on the face of the plea to exist in this case, and therefore the demurrer was properly sustained.

There was offered by the prisoner a second special plea, setting out that there was a conspiracy between the deceased and one Hoke, in pursuance of which they were assailing the prisoner when he killed the deceased in self-defence. This plea was embraced in and equivalent to the general issue of "not guilty," and hence there was no error in rejecting it. A special plea in a civil case which amounts only to the general issue, this Court has held, ought to be rejected, and there is no material difference in the general rules of pleading in civil and criminal causes. See *Van Winkle* v. *Blackford*, 28 W. Va. 670; *Fant* v. *Miller*, 17 Gratt. 47.

The first bill of exceptions is for the refusal of the court to give the following instruction : "That when one, without fault himself, is attacked by another in such manner or under such circumstances as furnish reasonable grounds for apprehending a design to take away his life, or to do him some great bodily harm, and there is reasonable ground for believing the danger imminent that such design will be accomplished, and the person assaulted has reasonable ground to believe, and does believe, such danger is imminent, he may act upon such appearances, and, without retreating, kill his assailant if he has reasonable ground to believe, and does believe, that such killing is necessary in order to avoid the apparent danger; and the killing under such circumstances is excusable, although it may afterwards turn out that the appearances were false, and that there was in fact neither design to do him some serious injury, nor danger that it would be done. But of all this the jury must judge, from all the evidence and circumstances of the case."

And here, at the outset, we may dispose of an objection urged by the Attorney-General, that these bills do not set out any evidence to show that there was sufficient ground to support the hypothesis of the instructions, and that the court will not look from one instruction to another. This court has held, however, that where there is an exception, wherein the court has certified all the evidence or facts proved in the case, the court will look to that in determining the question as to other bills of exceptions; and, as the twelfth exception in this case contains such a certificate, the difficulty raised by the Attorney-General is obviated. See *Hall* v. *Hall*, 12 W. Va. 2. It appearing, therefore, that there was evidence which tended to support the hypothesis of this first instruction, we think that it correctly states the law of self-defence in this State, and that the court erred in refusing it as it was asked, and giving in lieu of it a somewhat similar one, but weighted down by lengthy qualifications, based upon selection from the evidence of particular facts, which are thus given undue prominence, while the force of the exact and true statement of the principle which the defendant was endeavoring to get before the jury was dissipated and destroyed. A party has a right to have his instruction given in his own language, provided there are facts in evidence to support it, and provided that it contains a true statement of the law, and is not obscure, ambiguous or calculated to mislead.

The law of self-defence in this State was fully discussed in *Cain's Case*, 20 W. Va. 679, and we reaffirm the principles therein laid down, as follows:

"Where there is a quarrel between two persons, and both are in fault, and a combat as the result of such quarrel takes place, and death ensues, in order to reduce the offence to killing in self-defence two things must appear from the evidence and the circumstances of the case: *First*, that before the mortal blow was given the prisoner declined further combat, and retreated as far as he could with safety; and, *secondly*, that he necessarily killed the deceased in order to preserve his own life, or to protect himself from gseat bodily harm. When one without fault himself, is attacked by another in such a manner, or under such circumstances, as to furnish reasonable grounds for apprehending a design to

take away his life, or to do him some great bodily harm, and there is reasonable ground for believing the danger imminent that such design will be accomplished, and the person assaulted has reasonable ground to believe, and does believe, such danger imminent, he may act upon such appearances, and without retreating kill his assailant, if he has reasonable grounds to believe, and does believe, that such killing is necessary to avoid the apparent danger; and the killing, under such circumstances, is excusable, although it may afterwards turn out that the appearances were false, and there was in fact neither design to do him serious injury, nor danger that it would be done; but of all this the jury must judge, from all the evidence and circumstances of the case. In such a case, as to the imminency of the danger which threatened the prisoner, and the necessity of the killing, in the first instance the prisoner is the judge; but he acts at his peril, as the jury must pass upon his actions in the premises, viewing said actions from the prisoner's stand-point at the time of the killing; and if the jury believe, from all the facts and circumstances in the case, that the prisoner had reasonable grounds to believe, and did believe, the danger imminent, and that the killing was necessary to preserve his own life, or to protect him from great bodily harm, he is excusable for using a deadly weapon in his defence : otherwise he is not. * * * The bare fear that a man intends to commit murder or other atrocious felony, however well-grounded, unaccompanied by any overt act indicative of such intention, will not warrant killing the party by way of prevention. To warrant said killing, there must be some overt act indicative of imminent danger at the time, and the acts of the assailant must be such as, under all the evidence and circumstances of the case, to convince the jury that the prisoner had reasonable grounds to believe, and did believe, the danger imminent, and that the killing was necessary to preserve his own life, or to protect him from great bodily harm."

We hold this to be a true statement of the law of homicide in this State in relation to self-defence, defining, as it does, on the one hand, the exact circumstances which will excuse the defendant from retreating, and, on the other, utterly repudiating the erroneous doctrine, so fruitful of

murders and street-fights wherever promulgated, that a mere threat to kill on sight will justify a party, in a civilized community, in slaying the threatener, unless the latter is, at that very time, engaged in some overt, hostile act, indicative of immediate and imminent danger to the defendant.

The second bill of exceptions was based on the refusal of the court to give defendant's instructions Nos. 5 and 6.

No. 5 was as follows: "The court instructs the jury that in determining the guilt or innocence of the prisoner for the shooting of Jacob Kirby on the 21st day of February, 1889, they can not consider the shooting of John S. Hoke upon his wagon, except in so far as may tend to explain the prisoner's act in shooting or shooting at deceased as aforesaid;" and the court declined to give it, on the ground that it had already given one for the state as follows: "The court instructs the jury that in determining the question whether Evans killed Kirby in self-defence they may take into consideration all the circumstances which then occurred, including all the facts in evidence before them in regard to the shooting of Hoke by Evans." The court seems to have thought these instructions identical, but we do not so think, and we think it was error to refuse that of defendant. On the other hand, the sixth instruction asked for by the defendant is almost identical in language with the first instruction given for the state, and there was no error in refusing to repeat the same instruction, with only the change of one or two immaterial words. Courts are not schools of casuistry, but tribunals of common sense and substantial justice.

The fourth bill of exceptions is to the granting of the first three instructions asked for the state, two of which, the first and third, we have already considered. The second is as follows:

"The court instructs the jury that although they may believe from the evidence that the deceased, Jacob Kirby, had recently before his death made certain threats against the prisoner, the prisoner can not be excused for killing said Kirby on the ground of self-defence, unless it is shown to the jury by a preponderance of the evidence that, at the time the prisoner shot Kirby, he (Kirby) was making such an advance or attack on the prisoner as the prisoner believed,

and had reason to believe, indicated a purpose on the part of said Kirby to take the prisoner's life, or to do him some great bodily harm, and that there was reasonable ground for the prisoner to apprehend death or great bodily harm, and reason also for him to believe, and that he did believe, that he could only escape death or such great bodily harm by killing said Kirby."

Had the court granted the defendant's first instruction, as was proper, limiting the conditions under which retreat by the prisoner was imperative, there would have been no error in granting the instruction under consideration; but to grant the latter, after refusing the former, was, to say the least, of doubtful propriety, under the circumstances of this case.

The fifth bill of exceptions is based upon the refusal of the court to allow the prisoner's counsel to ask him, while being examined in his own behalf, the following question : "What were your feelings towards Hoke and Kirby prior to and up to the time of the shooting?" Malice is of the essence of murder, and the prisoner had a right to disprove it in any legitimate manner. Hence, since the statute made him a competent witness, his own testimony on this subject should have been received for what it was worth.

The sixth exception is to the ruling of the court in not allowing the prisoner, while on the stand, to be asked the following question : "State whether before the killing of Kirby you had heard anything as to the influence of Hoke over Kirby, and, if so, what was it?" This exception may be considered in connection with the ninth, which was based upon the refusal of the court to permit a disinterested witness to testify, as to the "general reputation" in the neighborhood, as to the influence said Hoke exercised over said Kirby. The limits as to the admissibility of hearsay testimony in proving general reports are well defined. They include veracity, chastity, genealogy, boundaries, violent or peaceable disposition, honesty, and a few other subjects, in proper cases. But to extend these limita to include so vague and general a subject as the "influence" of one man over another would be unwarranted by authority or precedent. An "influence" may not only be great or small, but it may

be positive or negative, religious or malevolent, moral or immoral; and to permit such a question would open up a field of hearsay testimony too extensive to be covered by any legitimate or profitable investigation upon such a trial. We think there was no error in excluding those questions.

The seventh bill of exceptions was taken because the Court refused to allow the prisoner, when on the stand, to answer this question : "What reason had you to believe that they the (deceased) would do you some great harm?" The court permitted him subsequently to testify "as to any act or declaration of Hoke or Kirby" which induced the prisoner to believe that they would do him some great bodily harm; and, as the exception does not state that he knew anything outside of their own acts and declarations which would have a tendency to induce such belief, we can not see that there was any error in rejecting the question, or that the prisoner has any grounds of complaint by reason of anything contained in this bill of exceptions.

The eighth bill of exceptions excepts to the court's action in sustaining the objections of the State to two questions which were propounded to the prisoner when on the stand. The first it is unnecessary to notice, since it was immaterial. The second was : "From what you had heard, and from the actions of Hoke and Kirby at the time of the shooting, what did you believe as to the necessity of using your pistol?" This was a proper question, and should not have been excluded. We are not prepared to say, and perhaps it is unnecessary to say, how far, in view of the evidence actually adduced in the case, as shown by the record, the prisoner was injured by its exclusion. Bill of exceptions No. 10 presents a more serious question. After the testimony had been closed on both sides, the prisoner's counsel offered to introduce witnesses to prove violent threats made by one of the slain men (Hoke) against the prisoner. The introduction of pretermitted testimony by either party, after the testimony has been announced as closed, is a matter addressed to the sound discretion of the court. But in this case the difficulty on that score seems to have been waived, and the court certifies its objection as based upon another ground, namely, that the threat had not been communicated to the

prisoner. Placed upon this ground, the objection was clearly untenable. Evidence of communicated threats is intended to shed light upon the mental attitude of the prisoner towards the deceased when the homicide occurred; uncommunicated threats are evidence of the mental attitude of the deceased towards the prisoner. Both are admissible. This point was ruled in Abbott's case in the following language: "When such threats and acts of violence, as above named, have, recently before the killing, been made by the person killed against the accused, and communicated to him before the killing, it is proper to permit the defendant to prove that on other occasions, recently before the killing, the said deceased threatened to others, upon more than one occasion, to kill the defendant on sight, for the purpose, at least, of showing the state of feeling of the deceased towards the defendant, although it does not appear that such threats last named were communicated to the defendant before the killing." 8 W. Va. 743, 744. We concur in this view, and reaffirm that decision.

Upon the whole, we are of opinion to reverse the court below, and award the prisoner a new trial. Having reached this conclusion, we have thought it improper to make any further comment upon the weight or effect of the evidence as certified. Because of the errors of the said circuit court, as ascertained and announced in this opinion, the judgment rendered by said circuit court in this case on the 14th day of October, 1889, against the prisoner, upon the verdict of the jury, must be reversed and annulled, and the verdict of the jury set aside, and a new trial awarded.

REVERSED. REMANDED.