[No. 22575. Department One. October 15, 1930.]

THE STATE OF WASHINGTON, *Respondent,* v. W. G. HULET, *Appellant.*[1]

[1]Reported in 292 Pac. 107.

*W. J. Murphy,* for appellant.

*Austin M. Wade, John C. Graham* and *A. P. Wilson,* for respondent.

TOLMAN, J.—Appellant was tried before a jury on an information charging, in count one, possession of intoxicating liquor with intent to sell, in count two, unlawful transportation of intoxicating liquor; and also the information charged two former convictions under the liquor laws of this state.

The jury found against him on count one of the information, and also found that he had twice theretofore been convicted of the violation of the liquor laws; but acquitted him of the charge of unlawful transportation. From a judgment and sentence, based upon the verdict, of not less than one or more than five years' imprisonment in the penitentiary, the defendant has appealed.

The first assignment of error is based upon the fact that the information is signed by A. P. Wilson, deputy prosecuting attorney, and the verification made by him recites that he is the person whose name is subscribed to the information. This seems to be sufficient under the statute and *State v. Hewett,* 103 Wash. 52, 173 Pac. 726.

In charging the former convictions, the following language was used:

"As a part of this information, and as a part of counts one and two, and each of said counts, the court is informed and advised, and it is alleged as a fact, that the defendant W. G. Hulet has been heretofore convicted," etc., etc.,

the remainder of the charge being in the usual form, and the date, the court and the nature of the offense of which the defendant was convicted being set out with definiteness and certainty. The words "the court is informed and advised," standing alone, might, perhaps, partake of the nature of a recital, but, being followed directly by the words "and it is alleged as a fact," the whole was amply sufficient to charge the prior convictions, and, those convictions being properly charged in the information, there was no error in receiving in evidence the transcripts of the prior judgments.

Nor was it error to cross-examine the appellant upon the subject of the former convictions. Such convictions might affect his credibility, and having offered himself as a witness, he was subject to any proper test thereof.

Complaint is made of the reception of evidence on rebuttal tending to contradict a statement drawn from the appellant by the state on cross-examination, as being an attempt to impeach him on a collateral matter. Apparently, from the record before us, this was not at all collateral to the charge upon which appellant was acquitted, but had a direct bearing on that issue, and the evidence was therefore properly received.

We find, also, that there was ample evidence to take the case to the jury upon both charges, and the motion for a directed verdict was properly denied.

We come now to the questions which are most seriously presented. A witness by the name of Crabtree had been called, and testified that he rented to the appellant, under the name of Clark, the garage in which the liquor, which was the basis of the possession charge, was found, identifying the appellant as the man who made the rental contract and paid the

rent. On the second day of the trial, after the witness had testified (on the first day), one of the jurors in the case was seen to eat lunch with the witness Crabtree in a restaurant open to the public, and afterwards to continue in conversation with him for a time, and both rode together in an automobile during the noon recess. No one says that they talked about the case. They both say that they did not, and Crabtree is not shown to have had any interest in the case one way or the other, he having been called to identify appellant as the man who, under another name, rented the garage, only. The matter was called to the attention of the trial court promptly, who, in effect, said that, in the absence of a motion for a mistrial, there was nothing that he could then do. No such motion was made.

Another matter which may be discussed with the incident just related is this. During the trial of this case, another state case was on trial in the other department of the court, and, during an intermission in this trial, some of the jurors entered the court room where the other trial was in progress. Nothing is shown to have occurred while those jurors were present which could possibly be prejudicial to appellant, but, because the brother of appellant was a witness for the state in the other case and the defense in that case made some sort of an attack upon him, it is argued that these jurors might have heard something which would prejudice them against this appellant. We regard this argument as too attenuated to require a serious answer, but what we have to say relating to the first incident will apply also to the other.

It is regrettable, of course, that anything should occur in the trial of a cause to arouse even a suspicion that justice has been defeated, and the courts should and do exercise the greatest care to avoid anything of

the kind. Here, if there was a showing that the witness Crabtree was the complaining witness in the case, and had suffered an injury to his person or loss of his property for which he held appellant responsible, there possibly would be some ground for arguing that he might consciously or unconsciously influence a juror, but, so far as we can gather, Crabtree had absolutely no interest in the case, had no possible grievance against the appellant, and could not have benefited in any way by any verdict the jury might render. Even if we should assume, which we cannot, that the juror in question was willing to disregard the court's instructions to talk to no one and to permit no one to talk to him about the case, still there is nothing upon which to base a probability of prejudice.

Having chosen not to move for a mistrial when the matter first became known, and to let the trial proceed in the hope of a verdict of acquittal, appellant cannot now take advantage of the occurrence without making a showing from which a probability, at least, of prejudice can be drawn.

Finding no prejudicial error, the judgment is affirmed.

MITCHELL, C. J., HOLCOMB, PARKER, and MAIN, JJ., concur.