305 S.E.2d 251

**STATE of West Virginia**

v.

**David WILLIAMS.**

No. 15746.

Supreme Court of Appeals of
West Virginia.

June 27, 1983.

Tutwiler, LaCaria & Murensky, Rudolph J. Murensky, II and Philip A. LaCaria, Welch, for appellant.

Chauncey H. Browning, Atty. Gen. and S. Clark Woodroe, Asst. Atty. Gen., Charleston, for appellee.

McGRAW, Chief Justice:

David Williams appeals from the final order of the Circuit Court of McDowell County sentencing him to imprisonment in the West Virginia Penitentiary for Men at Moundsville. The appellant was convicted after a jury trial of the following crimes: murder of the first degree without a recommendation of mercy, for which he was sentenced to life imprisonment without possibility of parole; arson in the first degree, for which he was sentenced to an indeterminate term of imprisonment of not less than two nor more than twenty years; robbery, for which he was sentenced to a determinate term of imprisonment of forty years. The appellant raises numerous assignments of error including errors in sentencing. We affirm the appellant's conviction, but remand the case for resentencing.

In February 1981, the appellant and Floyd Franklin were jointly indicted by a McDowell County Grand Jury on charges of murder of the first degree, arson in the first degree and robbery, all in connection with the death of Harold Testerman. Pursuant to a motion for severance, Franklin was tried first in April, 1981. The jury acquitted Franklin of the murder and arson charges, but found him guilty of robbery. Franklin was subsequently sentenced to imprisonment in the penitentiary for a term of forty years.

The appellant's trial was set for July. On June 8, 1981, the appellant filed a motion for a change of venue. After a hearing on the matter on June 16, 1981, the circuit court denied the motion. The appellant's case moved to trial on July 22, 1981, and the next day, the jury returned a verdict of guilty on all counts contained in the indictment. A hearing on the appellant's motion to set aside the verdict was held on July 31, 1981, at the conclusion of which the circuit court entered an order denying

the motion and sentencing the appellant. It is from this order that the appellant now appeals.

The evidence at trial was essentially as follows: On the afternoon of Sunday, December 7, 1980, Harold Testerman drove his Chevrolet pickup truck into the driveway of his home at Marytown, McDowell County. The 49-year-old Testerman, who lived alone, had been away hunting during the weekend. At approximately 5:30 p.m. he visited a neighbor and told her that he was going to a wake at the home of another neighbor. The pickup truck remained parked in the driveway throughout the evening.

At approximately 11:15 p.m. a neighbor saw two people, whom he could not identify, driving Harold Testerman's pickup truck away from the house at a high rate of speed. He thought it unusual for Mr. Testerman to be out that late at night and to be driving that fast. About 15 minutes later, a fire was reported at the Testerman residence by another neighbor, who noticed that Mr. Testerman's truck was not in the driveway at the time. The fire fighters who extinguished the blaze and the investigating police officers found the interior of the dwelling in disarray. Desk and dresser drawers had been pulled out and the furniture overturned. In the gutted living room of the house they found the charred remains of Harold Testerman's body. The body was sent to the office of the State Medical Examiner for an autopsy and the State Fire Marshal was called in to investigate the fire.

The autopsy, performed by Dr. Irvin M. Sopher, revealed that Mr. Testerman died sometime between 11:00 p.m. and midnight as the result of severe head injuries caused by an extremely forceful blow to the head with a blunt instrument. Traces of soot in the trachea and lungs and of carbon monoxide in the blood indicated that Mr. Testerman had been alive during the fire, but Dr. Sopher concluded that the fire had been only a contributing factor in the death since Mr. Testerman would have died of the head injuries within a short period of time even if there had been no fire. Dr. Sopher testified that the police description of the scene ruled out any possibility that the head injuries were the result of a structural collapse during the fire. No traces of alcohol or drugs were found in the body.

The Assistant State Fire Marshal's investigation of the scene revealed that the fire had originated in the interior of the Testerman house and had two separate and unconnected points of origin. The fire which did the most extensive damage originated in the living room sofa. A smaller, secondary fire originated on the living room floor in the approximate area where the head of the victim was located. No apparent accidental cause for the fires was found, and the Assistant State Fire Marshal concluded that they had been set intentionally.

The police began looking for the appellant and Floyd Franklin for questioning in connection with the death of Harold Testerman immediately after the fire. One witness had seen the two men together in the vicinity of the Testerman residence at approximately 1:30 p.m. on the day of the murder and again at approximately 9:00 p.m. Another witness, Steven Ray Duncan, later told the police that he had seen the appellant and Franklin in the area during the three or four hours immediately preceeding the fire. Sometime after 10:00 p.m. Duncan was approached by the appellant, who asked him to keep watch while the appellant burned down Testerman's house. When Duncan refused, the appellant grabbed him by the arm and threatened him, refusing to let him go until he promised to tell no one about the conversation. Duncan stated that he could tell that the appellant had been drinking.

The police were not immediately able to locate either the appellant or Floyd Franklin. On December 17, 1980, Franklin was located and questioned by the authorities. After talking to Duncan, the police obtained arrest warrants for the appellant and Franklin on December 30, 1980. Franklin was arrested that same day, but the police were still unable to locate the appellant. On December 31, 1980, the McDowell County authorities were notified that Harold Testerman's pickup truck had

been discovered, wrecked and abandoned, in a wooded area in Randolph County, North Carolina, 1.1 miles from the residence of a sister of the appellant. The license plates and the serial number plate affixed to the dashboard of the vehicle had been removed, and the tires, wheels, carburetor and alternator were missing.

The police were unable to discover the whereabouts of the appellant until January 16, 1981, when they were informed that the appellant was staying with his family in Big Jenny Hollow, McDowell County. Several officers went to the home of the appellant's parents on that day and were told that the appellant was not there. With the consent of the appellant's mother, the officers searched the house and discovered the appellant hiding under a bed in one of the bedrooms. The appellant was arrested without incident.

The appellant contends that this evidence was insufficient to support his conviction. He asserts that there was no direct evidence identifying him as the perpetrator of the crimes, pointing out that no fingerprints, footprints or other tangible evidence was found which would indicate the identity of the perpetrator, and that no one actually saw the crimes being committed. The appellant asserts that the State's evidence of his guilt was wholly circumstantial and, therefore, insufficient to support a conviction.

■ The well-established standard which guides our review of the sufficiency of evidence in a criminal trial was stated in Syllabus Point 1 of *State v. Starkey*, 161 W.Va. 517, 244 S.E.2d 219 (1978):

In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To war-

rant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done.

Where the sufficiency of circumstantial evidence is called into question, there is an additional consideration on review, as stated in *State v. Noe*, 160 W.Va. 10, 230 S.E.2d 826, 829–830 (1976):

[C]ircumstantial evidence will not support a guilty verdict unless the fact of guilt is proved to the exclusion of every reasonable hypothesis of innocence; and circumstances which create a mere suspicion of guilt but do not prove the actual commission of the crime charged, are not sufficient to sustain a conviction. (Citations omitted.)

Where circumstantial evidence concurs, as to time, place, motive, means and conduct, in pointing to the accused as the perpetrator of the crime, it is sufficient to support a conviction. *State v. Dobbs*, 163 W.Va. 630, 259 S.E.2d 829 (1979); *State v. Bailey*, 151 W.Va. 796, 155 S.E.2d 850 (1967); *State v. Beale*, 104 W.Va. 617, 141 S.E. 7 (1928); *State v. Gunnoe*, 74 W.Va. 741, 83 S.E. 64 (1914).

■ The evidence produced at trial, in this case when viewed in the light most favorable to the prosecution fulfills these requirements. The State proved the corpus delicti by direct evidence, the primary dispute being the identity of the person or persons who committed the crimes charged.[1] The prosecution on the murder charge proceeded on a theory of felony-murder. The evidence showed that the murder, the arson and the robbery were all committed within a short period of time. The appellant was shown to have been in the immediate vicinity of the Testerman home during the hours immediately proceeding the commission of the crimes. Testimony showed that during this time the

---

1. In *State v. Burton*, 163 W.Va. 40, 254 S.E.2d 129 (1979), we held that the identity of the perpetrator of a crime is not generally held to be a part of the corpus delicti, "since this term means proof that the crime occurred and that somebody else's criminality was the source of the crime, as distinguished from non-criminal source, e.g., accident or natural causes. (Citations omitted.)" *Id.* 163 W.Va. at ——, 254 S.E.2d at 134.

appellant had attempted to recruit another individual to assist him in an arson of the deceased's dwelling and threatened that person with retaliation if he told anyone. The State showed that immediately after the commission of the crimes, the appellant could not be found in McDowell County and that the stolen pickup truck was subsequently discovered in another state little more than one mile from the home of a close relative of the appellant. The jury here was properly instructed as to when circumstantial evidence will support a verdict of guilty. A reasonable interpretation of the evidence and the circumstances proved is consistent with the jury's finding of guilt. While the evidence upon which the verdict was based was largely circumstantial, it was substantial and, we believe, clearly sufficient to justify the jury's verdict. Accordingly, we do not find the manifest inadequacy of the evidence and consequent injustice which would warrant our interference with the verdict on this ground.

The appellant's next assignment of error is that the trial court abused its discretion in refusing the appellant's motion for a change of venue. The motion was based on a number of news articles, letters to the editor and a photograph which appeared in the *Welch Daily News* from December 8, 1980 to June 10, 1981, and which the appellant asserts were prejudicial.

The first series of articles and the photograph were published between December 8, 1980 and January 19, 1981. The articles reported only the facts of the death of Harold Testerman and the subsequent police investigation which culminated in the arrests of Floyd Franklin and the appellant. The photograph showed fire damage to the Testerman home. These articles and the photograph are more or less innocuous, making no mention of the appellant as a suspect until the report of his arrest in the January 19, 1981 issue.

A second series of three articles was published during the trial of Floyd Franklin in April, 1981. The first of these articles reported the beginning of Franklin's trial and the prosecuting attorney's opening statement, in which he explained the State's theory of the case that Franklin acted as an accessory while the appellant actually committed the crimes. The second article detailed a statement Franklin gave to the police after his arrest. This statement, which was read to the jury during Franklin's trial, implicated the appellant in the commission of the crimes. The final article reported Franklin's conviction on the robbery charge. It contained a statement, attributed to the prosecuting attorney, that the jury had been saving the first degree murder conviction for "the other one."

Three letters to the editor of the Welch Daily News were published in May and June of 1981. The first was written by Floyd Franklin's mother and criticized the severity of Franklin's sentence. The second, written by a "Friend of the Deceased" in response to the first letter, defended the court's sentence in light of the brutality of the crimes and of Franklin's involvement in them. The third letter was written by Franklin himself and indicated that had he not given a statement to the police his "friend" would probably never have been arrested. None of the letters mentioned the appellant by name.

At the hearing on the motion, the appellant introduced the testimony of two witnesses, both residents of Premier, McDowell County. The first witness testified that she had formed the opinion that the appellant was guilty from what she had read in the papers and that others in her community held the same opinion. On cross-examination, however, she admitted that she had no idea what opinions were held by residents of other areas of the county and that she thought the appellant could get a fair trial in McDowell County. The second witness, a sister of the appellant, testified that a prayer had been offered at the Premier Church approximately one month before the hearing for "the boys" who killed Harold Testerman. She stated, however, that she could remember no reference to Franklin or the appellant by name and that the facts of the case were not discussed.

A person accused of a crime may obtain a change of venue "for good cause shown". W.Va. Const. art. 3, § 14; W.Va. Code § 62–3–13 (1977 Replacement Vol.).

To warrant a change of venue in a criminal case, there must be a showing of good cause therefor, the burden of which rests on the defendant, the only person who, in any such case, is entitled to a change of venue. The good cause aforesaid must exist at the time application for a change of venue is made. Whether, on the showing made, a change of venue will be ordered, rests in the sound discretion of the trial court; and its ruling thereon will not be disturbed, unless it clearly appears that the discretion aforesaid has been abused.

Syl. Pt. 2, *State v. Wooldridge*, 129 W.Va. 448, 40 S.E.2d 899 (1946).

The extent and character of adverse pretrial publicity are substantial factors to be considered in determining whether to grant a defendant's motion for a change of venue. *See State v. Clawson*, 165 W.Va. 588, 270 S.E.2d 659 (1980); *State v. Sette*, 161 W.Va. 384, 242 S.E.2d 464 (1978). Generally, however, the mere existence of widespread publicity is not, in and of itself, sufficient to require a change of venue, nor is mere proof that prejudice exists against the accused. *State v. Boyd*, 167 W.Va. 385, 280 S.E.2d 669 (1981); *State v. Pratt*, 161 W.Va. 530, 244 S.E.2d 227 (1978). *See also, State v. Hamric*, 151 W.Va. 1, 151 S.E.2d 252 (1966). Rather, the "good cause" which an accused must show to be entitled to a change of venue on the ground of prejudicial pretrial publicity is the existence of a present, hostile sentiment against him, arising from the adverse publicity, which extends throughout the county in which the offense was committed, and which precludes the accused from receiving a fair trial in that county. *State v. Boyd, supra; State v. Peacher*, 167 W.Va. 540, 280 S.E.2d 559 (1981); *State v. Pratt, supra*.

After reviewing the evidence introduced at the hearing below, we do not conclude that the trial court abused its discretion in refusing to grant the appellant's motion for a change of venue. Although some of the newspaper articles and the letters to the editor contained references adverse to the appellant, there was no showing made by the appellant that their publication generated a hostile feeling against him throughout the community or that he was denied a fair trial in McDowell County because of them. Consequently, we find no reversible error in the trial court's ruling.[2]

The appellant also asserts that the trial court abused its discretion in refusing to grant his motion for a mistrial on the ground that publicity prejudicial to the appellant was disseminated in the course of trial. The appellant's motion resulted from an article which appeared in the *Welch Daily News* on the afternoon of July 22, 1981, the first day of trial. The article recounted the details of Floyd Franklin's statement to the police and comments attributed to the prosecuting attorney. The following morning, out of the presence of the jury, counsel for the appellant orally requested a mistrial on the basis of the article. The State opposed the motion on the ground that the previous evening, prior to excusing the jury for the day, the court had admonished the jurors not to discuss the case and to ignore anything they might read concerning the trial. Counsel for the appellant declined to question the jurors individually at that time for the reason that such an inquiry might raise suspicion in the mind of the jurors. The motion for a mistrial was overruled and the trial continued.

After the verdict, counsel for the appellant raised the issue again in his motion for a new trial. In support of the motion, counsel introduced into evidence two affidavits, given by brothers of the appellant, which stated that a juror had been seen carrying a copy of the *Welch Daily News*

---

**2.** We note that the *voir dire* examination appears to lend support to the trial court's ruling. Counsel for the appellant was permitted to conduct an extensive individual examination of the prospective jurors with respect to their exposure to the pre-trial publicity and its effect on their impartiality. There is nothing in the record to indicate that the jury ultimately selected to try the appellant was in any way prejudiced against him as a result of the adverse pretrial publicity.

into the jury room when he arrived on the morning of the second day of trial. The motion for a new trial was denied. The appellant asserts that due to the prejudicial nature of the newspaper article in question, the circuit court should have granted his motion for a mistrial.

 The decision to declare a mistrial, discharge the jury and order a new trial in a criminal case is a matter within the sound discretion of the trial court. *State v. Craft*, 131 W.Va. 195, 47 S.E.2d 681 (1948). A trial court is empowered to exercise this discretion only when there is a "manifest necessity" for discharging the jury before it has rendered its verdict. W.Va.Code § 62–3–7 (1977 Replacement Vol.). This power of the trial court must be exercised wisely; absent the existence of manifest necessity, a trial court's discharge of the jury without rendering a verdict has the effect of an acquittal of the accused and gives rise to a plea of double jeopardy. *See State ex rel. Brooks v. Worrell*, 156 W.Va. 8, 190 S.E.2d 474 (1972); *State ex rel. Dandy v. Thompson*, 148 W.Va. 263, 134 S.E.2d 730, *cert. denied*, 379 U.S. 819, 85 S.Ct. 39, 13 L.Ed.2d 30 (1964); *State v. Little*, 120 W.Va. 213, 197 S.E. 626 (1938).

 " 'It is improper for the jurors to read any newspaper articles discussing a case on trial. If the articles read are likely to mislead or improperly affect their minds, the impropriety may constitute reversible error.' Syllabus, *State v. Barille*, 111 W.Va. 567, 163 S.E. 49 (1932)." Syl. pt. 1, *State v. Williams*, 160 W.Va. 19, 230 S.E.2d 742 (1976). The principle underlying this statement is that the jury's information about a case should come from the evidence properly presented at trial and not from any extraneous source. *See Thompson v. Com.*, 219 Va. 498, 247 S.E.2d 707 (1978). In *Williams, supra* we held that

where the court finds that "a substantial likelihood exists that the verdict was influenced by the jury's exposure to newspaper articles or other media reports" a new trial is mandated. 160 W.Va. at 24, 230 S.E.2d at 746. Where the jury reads or is made aware of newspaper articles disseminated during the course of a criminal trial and there is a substantial likelihood that the information contained in such articles will influence the jury to the prejudice of the defendant, a "manifest necessity" may exist which would justify the trial court in declaring a mistrial and ordering a new trial.[3]

There is little question in our minds as to the possibly prejudicial nature of the information contained in the newspaper article which appeared on the first day of trial. The article gave the details of Franklin's statement implicating the appellant in the crimes, a matter which was never put into evidence at the appellant's trial.[4] It contained a statement made by the prosecuting attorney at the conclusion of Franklin's trial which theorized that Franklin's acquittal of the murder and arson charges indicated the jury's belief that the appellant had committed those crimes. If it had been shown that the jury had read the article, there may well have been "manifest necessity" warranting granting appellant's motion for a mistrial.

 Here, however, no showing was made at the time the motion for a mistrial was tendered that any member of the jury had in fact seen or read the offensive article. We do not think that prejudice to the accused can be presumed from the mere opportunity during trial to read or to hear about objectionable media reports. *See McHenry v. U.S.*, 276 F. 761 (D.C.Cir.1921); *Sundahl v. State*, 154 Neb. 550, 48 N.W.2d 689 (1951). Rather, a defendant who seeks a mistrial on the ground that the jury has

---

**3.** It should be noted that declaring a mistrial may not be necessary in all circumstances. Other corrective measures, such as cautionary instructions or excusing individual jurors, may be more appropriate, depending upon the facts and circumstances of each case. *See* W.Va. Code § 62–3–7; *U.S. v. Hankish*, 502 F.2d 71 (4th Cir.1974).

**4.** Floyd Franklin was scheduled to be a witness for the State, but shortly before the jury selection began he refused to testify. The State made no attempt during the appellant's trial to introduce into evidence the written statement given to the police by Franklin. Consequently the details of Franklin's statement were never put before the jury during the appellant's trial.

been improperly influenced by prejudicial publicity disseminated during trial must make some showing to the trial court at the time the motion is tendered that the jurors have in fact been exposed to such publicity. In the absence of a showing of juror exposure to prejudicial publicity during the course of trial, it will be presumed that the jurors followed the trial court's instructions to avoid or to ignore such publicity. *Waye v. Com.*, 219 Va. 683, 251 S.E.2d 202, *cert. denied*, 442 U.S. 924, 99 S.Ct. 2850, 61 L.Ed.2d 292 (1979).

 Since in many instances it would be impossible for a defendant to show actual juror exposure to prejudicial publicity without a direct inquiry of the jurors themselves, we believe the proper method of making such a showing is a poll of the jury at the time the motion for a mistrial is made.[5] In *State v. Williams, supra,* we cited with approval the following language from § 3.5(f) of the American Bar Association's Standards Relating to Fair Trial and Free Press:

> "If it is determined that material disseminated during trial raises serious questions of *possible prejudice,* the court may on its own motion or shall on motion of either party question each juror, out of the presence of the others, about his exposure to that material." [Emphasis supplied.]

160 W.Va. at 24, 230 S.E.2d at 746. If it appears from examination that none of the jurors were actually exposed to the prejudicial publicity, the court need make no further inquiry. *U.S. v. Hankish,* 502 F.2d 71 (4th Cir.1971). If any of the jurors indicate that they have in fact read the prejudicial article, then the court should proceed with the individual examination of each juror mandated by *State v. Williams, supra,* to determine the effect of such exposure upon the juror's ability to render an impartial verdict in the case and to ascertain the corrective measures necessary to afford the defendant a fair trial.

 Here, however, counsel for the appellant did not request that an inquiry be made of the individual jurors. Indeed, as we noted earlier, counsel expressly declined to make such an inquiry. Instead he acquiesced in the continuation of the trial. The State asserts that by declining the opportunity to poll the jury at the time the motion for a mistrial was made, the appellant waived his right to object to the possible prejudicial effect of the publicity on the impartiality of the jury. We agree.

We do not think it could be successfully argued that a defendant in a criminal trial can refrain from objecting until after the return of the verdict to the possible prejudicial effect on the jury of publicity disseminated during trial. If such objection is not raised when the defendant or his counsel first become aware of the publicity, it is waived. *See State v. Roden,* 216 Or. 369, 339 P.2d 438 (1959); *State v. Hulet,* 159 Wash. 72, 292 P. 107 (1930). Similarly, we do not think that a defendant should be permitted to refuse an opportunity to question the jurors as to their exposure to publicity during the course of trial, hoping for a favorable verdict, and then to raise the issue of prejudice upon return of an unfavorable verdict. The proper time to resolve the question of whether the jury has been improperly influenced by prejudicial publicity disseminated during the course of trial is when counsel and the court are made aware of the existence of such publicity. If a proper inquiry is made promptly, it is possible that the court can remove any infection by curative measures less extreme than declaring a mistrial and at the same time impress upon the jurors the importance of their avoiding such publicity. If it appears that the jury has been so influenced by the publicity that it cannot return an impartial verdict, then the State, the defendant and the jurors are spared the

---

5. We expressly disapprove the practice of some jurisdictions to require a showing of actual prejudice before the defendant is entitled to a poll of the jury. *See, e.g., People v. Holmes,* 191 Colo. 477, 553 P.2d 786 (Colo.1976); *State v. Stewart,* 219 Kan. 523, 548 P.2d 787 (1976);

*Huff v. Commonwealth,* 560 S.W.2d 544 (Ky. 1977). As we note, *infra,* all the defendant need show to be entitled to a poll of the jury is the likelihood of probable prejudice resulting from the adverse publicity. *See State v. Williams, supra.*

necessity of continuing a tainted and futile proceeding.

We sympathize with counsel's concern that a poll of the jury at an early stage of the trial may draw the jury's attention to the offending report and raise suspicion in their minds. Such a consideration has merit, however, only when the publicity is essentially harmless. *See Booton v. Hanauer*, 541 F.2d 296 (1st Cir.1976). Where a serious question of possible prejudice is raised by the content of media attention to the case during trial, the resulting likelihood that the defendant may be denied a fair trial outweighs any concern with tactics that might occur to counsel.

The appellant also contends that because he introduced evidence showing juror exposure to the offensive article at the hearing on the motion to set aside the verdict, he should not have been deemed to have waived his objection to the prejudicial effect of the publicity, and the trial court should have granted him a new trial. This evidence consisted of the affidavits of two brothers of the appellant stating that they saw a juror carrying a copy of the *Welch Daily News* into the jury room on the morning of the second day of trial. Neither the juror nor the edition of the newspaper was identified. The appellant asserts that he did not become aware of this information until after the trial.

We recognize that there may be circumstances in which a defendant is entitled to a new trial as a result of evidence of juror prejudice from adverse publicity, notwithstanding the fact that the defendant had previously declined to poll the jurors on the issue. We are of the opinion, however, that to overcome the failure to inquire of the jurors at the proper time the evidence must demonstrate that there was, at least, actual exposure to the prejudicial publicity and, at most, actual prejudice resulting therefrom. The affidavits submitted by the appellant, with their vague allegations

of an unidentified juror carrying an unspecified copy of the local newspaper into the jury room, does not meet even the minimum requirement.

 Consequently, we hold that where a defendant in a criminal trial declines the opportunity to poll the jurors as to their exposure to possibly prejudicial publicity disseminated during trial, such error is waived and may not be raised after the return of the verdict, unless the defendant produces evidence which indicates that some member of the jury was improperly affected by such publicity. Since the appellant in this case expressly declined to poll the jurors on the question of their exposure to the objectionable newspaper accounts, and produced no evidence after trial to indicate that the jury was improperly influenced thereby, we find no error in the trial court's denial of the motion for a mistrial.[6]

The appellant's next assignment of error concerns the trial court's limitation of the scope of the appellant's *voir dire* examination of the potential jurors. During his questioning of the entire venire, counsel for the appellant attempted to ask the following question: "Would any of you not be willing to recommend mercy for a person convicted of first degree murder?" The prosecuting attorney objected to this inquiry and the trial court sustained the objection. No reason was given for the objection or the court's ruling, and counsel for the appellant made no further attempt to question the prospective jurors in this area.

 The scope of the *voir dire* examination is generally a matter within the sound discretion of the trial court and is not subject to review except for abuse of discretion. *State v. Beacraft*, 126 W.Va. 895, 30 S.E.2d 541 (1944). However, the court may not so limit the examination so as to deprive the accused of his right to trial by a jury composed of persons with no

---

6. As we noted in *State v. Williams, supra,* the trial court may, on its own motion, inquire into the jurors' exposure to prejudicial material disseminated during trial. Such a decision is within the sound discretion of the trial judge. While it might have been preferable for the trial court in this case to make such an inquiry due to the prejudicial nature of the newspaper article, in view of the refusal of counsel for the appellant to request such an inquiry, we cannot say that the trial court's failure to poll the jury on its own motion constituted reversible error.

interest in the case and who are free from bias and prejudice. *State v. Peacher,* 167 W.Va. 540, 280 S.E.2d 559 (1981); *State v. Pratt,* W.Va., 244 S.E.2d 227 (1978). The defendant's right to an adequate and meaningful *voir dire* of the prospective jurors includes the right to inquire into any matter which is reasonably related to a possible challenge for cause or to a fair and intelligent exercise of his peremptory challenges. *State v. Pendry,* 159 W.Va. 738, 227 S.E.2d 210 (1976); *West Virginia Human Rights Commission v. Tenpin Lounge, Inc.,* 158 W.Va. 349, 211 S.E.2d 349 (1975).

It is generally recognized that where a jury in a criminal trial is vested with the discretion to fix the penalty to be imposed in the event the defendant is found guilty, the right of the defendant to an impartial jury includes the right to a jury free from prejudice respecting the penalties which may be imposed upon a finding of guilt. *See, e.g., U.S. v. Puff,* 211 F.2d 171 (2nd Cir.), *cert. denied,* 347 U.S. 963, 74 S.C. 713, 98 L.Ed. 1106, *reh. denied,* 347 U.S. 1022, 74 S.Ct. 876, 98 L.Ed. 1142, *reh. denied,* 348 U.S. 853, 75 S.Ct. 20, 99 L.Ed. 672 (1954). The question has arisen most often in the context of capital cases, where it has been held that both the defendant and the State may inquire of the prospective jurors during *voir dire* whether any of them has any unalterable prejudice against or in favor of the imposition of the death penalty. *State v. Henry,* 196 La. 217, 198 So. 910 (1940); *State v. McClellan,* 12 Ohio App.2d 204, 232 N.E.2d 414 (1967); *Patterson v. Commonwealth,* 222 Va. 653, 283 S.E.2d 212 (1981). *But see Rollins v. State,* 148 So.2d 274 (Fla.1963).

In *State v. Greer,* 22 W.Va. 800 (1883), it was held not to be error for the trial court to question the prospective jurors in a murder trial as to their beliefs respecting capital punishment and to excuse for cause a venireman who admitted that he had conscientious scruples against inflicting the death penalty in any circumstance. The reasoning behind the rule is that in order to qualify as impartial, the potential jurors must be free of any scruples or personal opinions which would preclude them from considering the complete range of possible penalties or from exercising their discretion to fix punishment. *Jones v. People,* 155 Colo. 148, 393 P.2d 366 (Colo.1964); *State v. Henry, supra; State v. Williams,* 538 S.W.2d 947 (Mo.App.1976).

Since 1965, when capital punishment was abolished, the crime of murder in the first degree is punishable in West Virginia by life imprisonment in the penitentiary. W.Va.Code § 61–2–2 (1977 Replacement Vol.). W.Va.Code § 62–3–15 (1977 Replacement Vol.) specifies that a person convicted of first degree murder is not eligible for parole, but provides that "the jury may, in their discretion, recommend mercy, and if such recommendation is added to their verdict, such person shall be eligible for parole in accordance with the provisions of [Chapter 62, Article 12 of the Code]." This statute clearly places in the jury the discretion to fix the punishment to be imposed upon a finding that an accused is guilty of murder in the first degree. Accordingly, a defendant charged with murder of the first degree is entitled to question the potential jurors on *voir dire* to determine whether any of them are unalterably opposed to making a recommendation of mercy in any circumstances in which a verdict of guilt is returned.

■ This is not to say, however, that counsel for the accused is allowed unlimited latitude in the *voir dire* examination of the potential jurors on this issue. The purpose of such questioning should be to discover whether any of the prospective jurors hold any personal, moral, religious or philosophical beliefs, convictions, scruples or opinions which would preclude them from considering the imposition of a particular penalty in the event of conviction regardless of the circumstances of the case. The inquiry must go to the willingness of the prospective jurors to exercise their discretion to determine the penalty. Counsel may not use the *voir dire* to suggest a verdict to the jury or to elicit a commitment from the jury to return a particular penalty in the event of conviction. *State v. Ward,* 569 S.W.2d 341 (Mo.App.1978); *State v. McCaine,* 460 S.W.2d 618 (Mo.1970). In addition, the questions should be specific

enough to adequately inform the jury of the substance of counsel's inquiry.

■ We do not think the question offered by counsel meets these requirements. Counsel did not specifically inquire into whether any of the prospective jurors would be unwilling to make a recommendation of mercy in *any* circumstance in which an accused was found guilty of first degree murder. Moreover, counsel made no attempt to explain to the jury that they were vested with the discretion to make the recommendation or the consequences of such recommendation. The question was simply too vague to elicit the proper information from the prospective jurors. Although counsel or the court, in its discretion, might have offered a more specific inquiry which would go to the willingness of the jurors to exercise their discretion in this matter, the record before us does not show an abuse of discretion by the trial court which would warrant reversal.

The appellant next asserts that reversible error was committed when the trial court addressed certain remarks to the jury panel during the juror selection process. It appears that the appellant and his counsel had withdrawn from the courtroom to review the jury list prior to exercising their peremptory challenges and were not present when the trial judge made his comments to the panel. The error alleged by the appellant is the failure of the trial court to have his remarks recorded by the court reporter.

In *State v. Bolling*, 162 W.Va. 103, 246 S.E.2d 631 (1978), we discussed at some length the question of what portions of a criminal trial should be recorded by a court reporter. In that case we recognized that our statutes, W.Va.Code §§ 51–7–1 and 51–7–2 (1981 Replacement Vol.), require all proceedings in criminal trials to be reported, but we adopted the federal rule that the failure to report some portion of the proceedings does not constitute reversible error in all circumstances.

The question of when the failure to report portions of criminal proceedings will constitute reversible error cannot be answered by a mechanistic rule. Generally, the failure to report some part of the proceeding will not alone constitute reversible error. Some identifiable error or prejudice must be shown by the defendant. *Id.* 162 W.Va. at 114–115, 246 S.E.2d at 638.

The appellant relies heavily on our decision in *State v. Vance*, 162 W.Va. 467, 250 S.E.2d 146 (1978), for the proposition that the failure to report the trial court's remarks to the jury panel is, in and of itself, reversible error. This reliance is misplaced. In *Vance*, the accused and his counsel had been excluded from a pre-trial orientation proceeding for the newly-called jury panel for that term of court. Vance appealed on the ground that such a proceeding was a critical stage at which the accused's presence was required. We held that it was not, but, recognizing the possibility that the trial judge might make erroneous or improper comments to the jury panel during the orientation meeting which could prejudice the accused's rights, we also held that despite the fact that the proceeding was not a critical stage a court reporter should be present at such proceedings to record the remarks of the trial court to the jury panel. We declined to reverse Vance's conviction for the failure of the trial court to report the proceedings, however, on the ground that "no prejudice was shown to the rights of the defendant here ...." *Id.* 162 W.Va. at 476, 250 S.E.2d at 152. Although there was no citation of authority, it is clear that our decision in *Vance* adhered to the principles enunciated in *State v. Bolling, supra*.

■ In this case, the appellant claims no prejudice or error resulting from the trial court's remarks to the jury panel. The judge's comments were, of course, unrecorded, but during the hearing on the motion to set aside the verdict, the trial court placed on the record a summary of his remarks, which apparently were directed to explaining to the jurors who had been serving throughout that term of court why additional jurors had been called on that day.[7] We do not think these remarks were

---

7. The Court: The remark I want to make as far as the Court's remarks to the jury while you

sufficiently prejudicial in and of themselves to warrant reversal of the appellant's conviction. Naturally, we are of the opinion that the better course is for the court reporter to record any comments or remarks addressed to the jury by the trial court at any point in the proceedings, especially when the accused is not present. However, in the absence of even an allegation of prejudice or error resulting from the failure of the trial court to have such remarks reported, we find no ground for reversal.

The appellant also asserts that the trial court erroneously permitted the State to introduce evidence that the appellant fled McDowell County immediately following Harold Testerman's death. This evidence consisted primarily of the testimony of the investigating officers that they were unable to locate the appellant in McDowell County until January 16, 1981, when he was arrested, and the evidence that Testerman's truck was discovered in North Carolina. No objection was made to the introduction of this evidence at trial. The appellant asserts, however, that the trial court here erred in admitting the evidence without first holding a hearing out of the presence of the jury to determine its probative value.

█ In *State v. Payne*, 167 W.Va. 252, 280 S.E.2d 72 (1981), we held, in Syllabus Point 6:

> In certain circumstances evidence of the flight of the defendant will be admissible in a criminal trial as evidence of the defendant's guilty conscience or knowledge. Prior to admitting such evidence, however, the trial judge, *upon request by either the State or the defendant*, should hold an *in camera* hearing the

determine whether the probative value of such evidence outweighs its possible prejudicial effect. (Emphasis added.)

Here there was no request by either the State or the defense for such an *in camera* hearing. Consequently, there was no error in this case in the trial court's admission of the evidence of flight.

The appellant also assigns as error the trial court's rulings on certain of the instructions proffered both by the defense and by the State. The appellant first asserts that the trial court erred in refusing to give Defendant's Instructions Nos. 1, 2 and 3, which directed, the jury to find the appellant not guilty of murder, arson and robbery, respectively. We have already concluded that there was sufficient evidence to support the appellant's convictions. It goes without saying that there was sufficient evidence to warrant submission of the case to the jury. *See State v. Woods*, 169 W.Va. 767, 289 S.E.2d 500 (1982); *State v. Johnson*, 159 W.Va. 682, 226 S.E.2d 442 (1976).

The appellant also challenges the trial court's refusal of Defendant's Instructions Nos. 5, 6, 8 and 15 which instructed the jury as to the presumption of innocence, the burden of proof and reasonable doubt. The trial court refused these instructions on the ground that the legal principles they contained were adequately covered by instructions proffered by the State. The appellant asserts, however, that he was entitled to have them read to the jury in his own language.

█ A defendant may have the right to have an instruction given in his own language provided that there are facts in evidence to support the instruction, that the instruction contains a correct statement of the law and that the instruction is not

gentlemen were striking the jury, they were not orientation remarks on the part of this Court. The Court was explaining to the jurors who had been serving regularly here in Court B why we had additional jurors that day, words to that effect, and so forth, and explained to them how they happened to be selected as jurors by the jury commissioners. This Court made no reference to this case or any case. The comment made was that this Court was interested in seeing that the accused or anyone before this Court received a

fair trial, and that was the reason that morning or that day, the first day, that we had additional jurors here, to see that this accused received a fair and impartial trial. The Court anticipated maybe, you'd already had the motion here sometime before this with reference to your change of venue, that we have the jury. That was the subject of my remarks to the jurors present in this Court. It never mentioned any evidence. It never mentioned any names. Didn't mention this case. Nothing whatsoever.

vague, ambiguous, obscure, irrelevant or calculated to mislead the jury. *State v. Evans*, 33 W.Va. 417, 10 S.E. 792 (1980). Where, however, both the State and the defendant have offered instructions which in form and effect embody the same legal principle and amount to the same thing, it is not reversible error for the trial court to give one instruction and to refuse the other. *State v. Hamric*, 151 W.Va. 1, 151 S.E.2d 252 (1966); *State v. Rice*, 83 W.Va. 409, 98 S.E. 432 (1919). After reviewing the instructions proffered by the appellant and those given by the trial court at the request of the State, we find no reversible error in the trial court's refusal of Defendant's Instructions Nos. 5, 6, 8 and 15.

▉ The appellant also contends the trial court erred in giving State's Instructions Nos. D & E in that there was insufficient evidence to support the giving of those instructions. State's Instruction No. E informed the jury of the circumstances in which they might return a verdict of guilty based on circumstantial evidence. State's Instruction No. D, informed the jury of the circumstances in which they might find the appellant guilty of felony-murder. As we have already noted, we are of the opinion that there was sufficient evidence to warrant submission of these issues to the jury. Since both instructions contained accurate statements of the law, we find no error in the giving of State's Instructions Nos. D and E.[8]

The appellant's final assignment of error is that the trial court violated the double jeopardy provisions of our federal and state constitutions by entering the order of conviction and sentencing with respect to the arson and robbery convictions. U.S. Const. Amend. V; W.Va. Const. art. 3, § 5. The appellant contends that since his first-degree murder conviction was a conviction for felony-murder, the arson and robbery were lesser included offenses. Consequently, he argues, double jeopardy prohibited his conviction and sentencing of the lesser charges. The appellant further asserts that the trial court erred in refusing to instruct the jury to return a verdict of not guilty on the arson and robbery charges on this ground.

The double jeopardy clauses of our federal and state constitutions protect an accused in a criminal proceeding from multiple prosecutions and multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *Conner v. Griffith*, 160 W.Va. 680, 238 S.E.2d 529 (1977). This protection has been held to prohibit serial prosecutions and the imposition of separate punishments for both a greater and a lesser included offense arising out of a single criminal act or transaction. *Harris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977); *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *State v. Pancake*, 170 W.Va. 690, 296 S.E.2d 37 (1982); *State ex rel. Hall v. Strickler*, 168 W.Va. 496, 285 S.E.2d 143 (1981).

In *State ex rel. Hall v. Strickler, supra*, we held that where a defendant had been convicted of felony-murder, double jeopardy would prohibit a second trial of the defendant on the underlying felony of robbery. Citing with approval the decision of the United States Supreme Court in *Harris v. Oklahoma, supra*, we stated: "Robbery is a lesser included offense of felony-murder if a conviction for the greater offense (felony-murder) could not be had without conviction for the lesser crime (robbery)." 168 W.Va. at 498–499, 285 S.E.2d at 144. The dicta in *Hall* indicated that if the defendant were convicted of and sentenced to imprisonment for both murder and robbery, his sentence would violate the double jeopardy prohibition against multiple punishments.

---

**8.** With respect to State's Instruction No. D, the appellant also objects to the use of Franklin's name in the instruction on the ground that there was no evidence that Franklin was involved in the crime. The evidence did show, however, that Franklin was with the appellant throughout the day of the murder, that two men were seen driving away from the scene in Testerman's truck and that Franklin and the appellant were both sought by the police and arrested in connection with the crime. Although the instruction might have been more artfully drawn by excluding Franklin's name, we do not think that its inclusion in the instruction would have so confused or mislead the jury as to warrant reversal of the conviction.

The State urges us to reconsider our holding in *Hall*. It asserts that the murder, robbery and arson "are separate and distinct crimes with different elements and requiring different types of evidence." In support of this assertion the State points out that each of the crimes with which the appellant was charged is defined by, and the punishment prescribed therefore set forth, in different statutes.[9]

The determination of whether a person is being tried for or has been convicted of both a greater and a lesser included offense does not necessarily turn on whether he is charged with violating more than one criminal statute. "Since many statutory crimes are duplicative, it is well established that separate statutory crimes may be the 'same offense' under the double jeopardy clause, even though they are not identical in either constituent elements or actual proof. (Citation omitted)." *State v. Reed*, 166 W.Va. 558, 276 S.E.2d 313 (1981). In the absence of any expression of legislative intent on the issue, the test of whether violations of separate statutory provisions arising out of one criminal episode constitute the "same offense" for double jeopardy purposes is the "same evidence" test.

> "The applicable rule is that where the same act or transaction constitutes a violation of two distinct provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not."

*State v. Pancake, supra* 170 W.Va. at 695, 296 S.E.2d at 42, *quoting Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932).

■ The crime of felony-murder is a distinct category of first-degree murder, which is defined as "murder ... in the commission of, or attempt to commit, arson, rape, robbery or burglary ...." W.Va.Code § 61–2–1. To sustain a conviction of felony-murder, proof of the elements of malice, premeditation or specific intent to kill is not required. *State v. Sims*, 162 W.Va. 212, 248 S.E.2d 834 (1978). Rather, the elements which the State is required to prove to obtain a conviction of felony murder are: (1) the commission of, or attempt to commit, one or more of the enumerated felonies; (2) the defendant's participation in such commission or attempt; and (3) the death of the victim as a result of injuries received during the course of such commission or attempt. *See State v. Beale*, 104 W.Va. 617, 141 S.E. 7, 401 (1927).

■ When we apply the same evidence test enunciated above to the statutes applicable in this case, we think it is clear that robbery or arson upon which a felony-murder case is based constitutes a lesser included offense. The commission of the robbery and/or the arson was an essential element of the crime of felony-murder as proved by the State. The statutes which define arson and robbery do not require proof of any fact which the felony-murder provision did not. Consequently, we reaffirm our holding in *State ex rel. Hall v. Strickler, supra*, and, in reliance on that decision, we hold that double jeopardy prohibits an accused charged with felony-murder, as defined by W.Va.Code § 61–2–1, from being separately tried or punished for both murder and the underlying enumerated felony.[10]

■ It follows from our holding that the imposition of punishment for the lesser included offense of the felony-murder in this case was unconstitutional. However, since the jury was instructed that it might

---

**9.** The definition of the crime of murder in the first degree is provided in W.Va.Code § 61–2–1 (1977 Replacement Vol.). The punishment for murder in the first degree is set forth in W.Va. Code § 61–2–2 (1977 Replacement Vol.). The crimes of robbery and arson are defined and the penalties therefore specified in W.Va.Code §§ 61–2–12 and 61–3–1 (1977 Replacement Vol.), respectively.

**10.** The State also asserts that since *Hall* was not decided until several months after the appellant's trial and sentencing, it may not be applied to vacate the arson and robbery sentences imposed by the trial court. We note only that the United States Supreme Court reached the same conclusion in its Fifth Amendment analysis in *Harris v. Oklahoma* and *Brown v. Ohio, supra*, in 1977, which was binding on the states through the Fourteenth Amendment.

return a guilty verdict on the murder charge upon a finding that the appellant participated in the commission of either the robbery or the arson, it is impossible for us to determine which of the two charges the jury found to be the underlying felony. To secure the protections afforded the appellant by our double jeopardy laws, we reverse the sentences for both the arson and robbery convictions and remand the case for resentencing.

█ The appellant's assertion that the trial court's refusal to instruct the jury to find the appellant not guilty of arson and robbery violated the guarantee against double jeopardy is not well taken. Since the question of the appellant's participation in one or both of those crimes was an essential element of the State's felony-murder case, it was properly submitted to the jury. Consequently we find no double jeopardy error which would warrant reversal of his conviction and the award of a new trial.

█ Having discussed all of the errors raised by the appellant, we conclude that there was no error at trial which would warrant reversal of the appellant's convictions. We are of the opinion, however, that the appellant was unconstitutionally sentenced to terms of imprisonment for arson and robbery. When there is no error in a criminal case other than the judgment imposing sentence, the judgment should be reversed and remanded for entry of a proper sentence by the trial court. *State v. Fairchild*, 171 W.Va. 137, 298 S.E.2d 110 (1982); *State ex rel. Nicholson v. Boles*, 148 W.Va. 229, 134 S.E.2d 576 (1964); *State ex rel. Mounts v. Boles*, 147 W.Va. 152, 126 S.E.2d 393, *cert. denied*, 371 U.S. 930, 83 S.Ct. 298, 9 L.Ed.2d 235 (1962). Consequently, we affirm the appellant's convictions, but reverse the sentencing order and remand the case to the Circuit Court of McDowell County for resentencing in accordance with the principles set forth in this opinion.

Affirmed in part; reversed in part and remanded.