700 S.E.2d 331

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Willie SHARP, Defendant Below, Appellant.**

No. 35303.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 8, 2010.

Decided Sept. 16, 2010.

272

Crystal L. Walden, Office of the Public Defender, Charleston, WV, for Appellant.

Darrell V. McGraw, Jr., Attorney General, R. Christopher Smith, Assistant Attorney General, Charleston, WV, for Appellee.

PER CURIAM:

Mr. Willie Sharp (hereinafter "Mr. Sharp") appeals from an order of the Circuit Court of Cabell County sentencing him to not less than two nor more than thirty years imprisonment. A jury convicted Mr. Sharp of one count of delivery of a controlled substance. Here, Mr. Sharp contends that (1) the evidence was insufficient to convict him and (2) the trial court erred in denying his motion for mistrial due to the introduction of improper evidence. After a careful review of the briefs, listening to the arguments of the parties, and consideration of the record submitted on appeal, we affirm.

## I.

### FACTUAL AND PROCEDURAL HISTORY

On November 2, 2007, two undercover police officers, T. Bevins and D. Castle, were conducting an undercover drug-buy opera-

tion in the Fairfield area of Huntington, West Virginia. While driving through the Fairfield area in an unmarked car, the officers saw Mr. Sharp signal to them to stop. After the officers pulled over, Mr. Sharp approached their car. Mr. Sharp informed the officers that he could obtain drugs for them. The officers indicated they were interested in making a purchase. Mr. Sharp got into the officers' car and directed them to where he could obtain drugs. After the officers reached the area where Mr. Sharp directed them, Mr. Sharp got out of the car and indicated he would meet them back at the same area in a few minutes. The officers then drove around for about 10 to 15 minutes before returning. Upon their return, Mr. Sharp approached the passenger side of the vehicle and gave Officer Castle crack cocaine. Officer Castle gave Mr. Sharp twenty dollars for the drug. After the drug transaction concluded, the officers drove away. The drug transaction between Mr. Sharp and the officers was recorded by a hidden camera inside their car.

In September 2008, Mr. Sharp was indicted for delivery of a controlled substance.[1] The case was tried before a jury on November 24, 2008. During the trial, the State called six witnesses, all of whom were law enforcement agents. Mr. Sharp did not call any witnesses, nor did he testify.[2] The jury returned a verdict on November 25, 2008, convicting Mr. Sharp of delivery of a controlled substance. The trial court subsequently sentenced Mr. Sharp to not less than two nor more than thirty years imprisonment.[3] This appeal followed.[4]

## II.

### STANDARD OF REVIEW

In this case, Mr. Sharp contends that the evidence was insufficient to convict him and that the trial court committed error in denying his motion for a mistrial. With respect to a claim of insufficiency of evidence, this Court follows the standard of review set forth in Syllabus point 3 of *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995), which provides that

criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

With regard to Mr. Sharp's assertion that he was entitled to a mistrial, we have held that "[t]he decision to declare a mistrial, discharge the jury, and order a new trial in a criminal case is a matter within the sound discretion of the trial court." Syl. pt. 8, *State v. Davis*, 182 W.Va. 482, 388 S.E.2d 508 (1989). Consequently, "[t]he decision to grant or deny a motion for mistrial is reviewed under an abuse of discretion standard." *State v. Lowery*, 222 W.Va. 284, 288, 664 S.E.2d 169, 173 (2008). In *State v. Williams*, 172 W.Va. 295, 305 S.E.2d 251 (1983), this Court explained that

[t]he decision to declare a mistrial, discharge the jury and order a new trial in a criminal case is a matter within the sound discretion of the trial court. A trial court is empowered to exercise this discretion only when there is a 'manifest necessity' for discharging the jury before it has ren-

---

1. The indictment also alleged a charge for possession with intent to deliver a controlled substance. The charge was dismissed prior to trial.

2. Additional facts are set out in Section III, *infra*.

3. Mr. Sharp's sentence was enhanced because of a prior conviction.

4. Mr. Sharp was resentenced to make this appeal timely.

dered its verdict. This power of the trial court must be exercised wisely; absent the existence of manifest necessity, a trial court's discharge of the jury without rendering a verdict has the effect of an acquittal of the accused and gives rise to a plea of double jeopardy.

*Williams*, 172 W.Va. at 304, 305 S.E.2d at 260 (citations omitted).

With these standards in mind, we will address the issues raised by Mr. Sharp.

## III.

## DISCUSSION

### A. *Insufficiency of Evidence*

■■■ Mr. Sharp set forth two assignments of error. We will consider each one separately. The first issue raised by Mr. Sharp is that the evidence was insufficient to sustain his conviction. Specifically, Mr. Sharp contends that the State failed to prove that the crack cocaine tested at the State forensic crime lab, and introduced into evidence, was the same crack cocaine he sold to the undercover officers. This Court held

> [t]he function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. pt. 1, *Guthrie*, 194 W.Va. 657, 461 S.E.2d 163.

In this case, the undercover officers testified that Mr. Sharp sold them one "chunk" of tan crack cocaine, valued at twenty dollars.

However, the State's forensic expert who tested the crack cocaine testified that she was given a packet that contained "chunks" of tan crack cocaine. Mr. Sharp now argues that the cocaine tested and introduced into evidence was from a different drug transaction the undercover officers made with another person.[5] Consequently, Mr. Sharp contends that the State failed to prove that the substance he sold to the officers was, in fact, a controlled substance. We disagree.

While it is true the forensic expert testified that she received "chunks" of crack cocaine, there is nothing in the record to suggest the forensic expert was given the wrong evidence to analyze. The officers involved with the collection and preservation of the crack cocaine that was purchased from Mr. Sharp testified as to its handling and storage.

Officer P. Hunter testified that undercover Officer Castle gave him the crack cocaine that was purchased from Mr. Sharp.[6] Officer Hunter indicated that when the crack cocaine was given to him, he placed it in a bag, sealed it, placed identifying information on it, and placed it in the Huntington Police Department evidence locker. Officer Darren McNeil, who was in charge of the evidence locker, testified that the crack cocaine was removed by Officer S. Compton on March 5, 2008, and taken to the State forensic crime lab.[7] Officer Compton testified to removing the crack cocaine and taking it to the State forensic crime lab.

During the chain of custody testimony by Officers Hunter, McNeil, and Compton, there was no testimony regarding a mix-up in the crack cocaine that was purchased from Mr. Sharp. However, Mr. Sharp has seized upon the use of the word "chunks" by the State's forensic expert, Officer C. Kirkpatrick, to argue that a mixup occurred. Officer Kirkpatrick testified that she tested "chunks" of crack cocaine that weighed approximately 0.16 grams. However, the weight of the

---

5. The evidence at trial indicated that, shortly after the undercover officers bought the crack cocaine from Mr. Sharp, they made another undercover purchase from a different drug dealer. This second undercover drug transaction involved the purchase of several "chunks" of crack cocaine.

6. Officer Hunter acted as backup security for the undercover officers.

7. Officer McNeil was not the evidence locker property officer when the crack cocaine was initially stored.

"chunks" was consistent with testimony regarding the approximate weight of crack cocaine valued at twenty dollars.[8]

During closing arguments to the jury, Mr. Sharp argued that, because Officer Kirkpatrick used the word "chunks," the State provided her with the wrong evidence for testing.[9] To the extent that Mr. Sharp made an issue of what officer Kirkpatrick meant by using the word "chunks," [10] we have made clear that " 'the resolution of factual disputes in a criminal trial is a function of the jury[.]' " *State v. Duncan,* 179 W.Va. 391, 396, 369 S.E.2d 464, 469 (1988) (quoting *State v. Ashcraft,* 172 W.Va. 640, 646–47, 309 S.E.2d 600, 607 (1983)). *See* Syl. pt. 2, *State v. Bailey,* 151 W.Va. 796, 155 S.E.2d 850 (1967) ("The jury is the trier of the facts and in performing that duty it is the sole judge as to the weight of the evidence and the credibility of the witnesses."). The jury rejected Mr. Sharp's contention that the State may have tested and introduced the wrong evidence. We previously have held that " '[a] reviewing court should not reverse a criminal case on the facts which have been passed upon by the jury, unless the court can say that there is reasonable doubt of guilt and that the verdict must have been the result of misapprehension, or passion and prejudice.' " *State v. Biehl,* 224 W.Va. 584, 587, 687 S.E.2d 367, 370 (2009) (quoting Syl. pt. 3, *State v. Sprigg,* 103 W.Va. 404, 137 S.E. 746 (1927)). We find that the chain of custody evidence in this case was sufficient to warrant the jury's rejection of Mr. Sharp's contention that the State failed to prove the substance he sold to the officers was crack cocaine. The jury could have reasonably inferred, as argued by the State, that the crack cocaine simply broke into several pieces at some point.

## B. *Mistrial*

■ Mr. Sharp contends that he is entitled to a new trial because there was improper testimony suggesting that he had a prior criminal record and had been incarcerated. The improper evidence of which Mr. Sharp complains was introduced during the State's direct examination of Officer Hunter. The following relevant exchange occurred:

Q. And were you able to view a video involving this transaction?

A. Yes.

Q. And did you—let me rephrase. Based on that information, did you identify the subject in it?

A. Well, Corporal [S.] Bills and myself, after the purchase is done, a lot of times we will review the [video] to try and determine who the suspect is. And we were able to look at our photo mug shot, our pictures at headquarters. And Corporal Bills is also—had worked in the jail years ago.

Defense Counsel: Objection.

The Court: Sustained. The jury is—at this time, Ladies and Gentlemen of the Jury, I'm going to ask you to retire to the jury room while we take another matter up.

After the jury was excused, Mr. Sharp moved for a mistrial. The trial court determined that officer Hunter's comments were improper. The trial court also determined that the comments were not responsive to the question asked by the State. The trial court found that the improper comments were harmless and, therefore, denied the motion for mistrial. Further, the trial court gave Mr. Sharp the option of having the court provide the jury with a cautionary instruction regarding the improper testimo-

8. There was testimony by Officer Hunter that usually a twenty dollar chunk of crack cocaine weighed a little less or more than 0.2 grams. Mr. Sharp objected to this testimony. The trial court initially sustained the objection; but, subsequently overruled the objection. It should be noted that 0.16 grams is the equivalent of 0.005643 oz. and 0.2 grams is the equivalent of 0.007054 oz. *See Grams to Ounces Conversion,* http://www.metric-conversions.org/weight/grams-to-ounces.htm.

9. At the close of the State's case-in-chief, Mr. Sharp moved for judgment of acquittal only on one ground. Mr. Sharp contended that the State failed to make a proper in-court identification of him as the person who sold the crack cocaine to the undercover officers. Mr. Sharp did not move for judgment of acquittal on the ground that the State failed to prove that the substance he sold was, in fact, crack cocaine.

10. The State contends that the chunk of crack cocaine sold by Mr. Sharp simply broke into several pieces at some point.

ny.[11] Mr. Sharp declined to have a cautionary instruction given to the jury.

■ We agree with the trial court that the comments by Officer Hunter were improper, but harmless. The test used by this Court to determine whether the introduction of improper evidence constitutes reversible error is as follows:

Where improper evidence of a nonconstitutional nature is introduced by the State in a criminal trial, the test to determine if the error is harmless is: (1) the inadmissible evidence must be removed from the State's case and a determination made as to whether the remaining evidence is sufficient to convince impartial minds of the defendant's guilt beyond a reasonable doubt; (2) if the remaining evidence is found to be insufficient, the error is not harmless; (3) if the remaining evidence is sufficient to support the conviction, an analysis must then be made to determine whether the error had any prejudicial effect on the jury.

Syl. pt. 2, *State v. Atkins*, 163 W.Va. 502, 261 S.E.2d 55 (1979).

Under the facts of the instant case, we have no doubt that, after removing the improper comments by Officer Hunter, the evidence was sufficient for the jury to find Mr. Sharp guilty beyond a reasonable doubt. The jury in this case heard the testimony of two officers who stated that Mr. Sharp sold them crack cocaine. This testimony was corroborated by a videotape that the jury saw, which clearly showed Mr. Sharp offering to sell and selling crack cocaine to the officers. Other than cross-examining the State's witnesses, Mr. Sharp did not call any witness to refute what was seen on the videotape and testified to by the officers. Additionally, the jury heard testimony from the State's forensic expert that the substance Mr. Sharp sold to the officers was, in fact, crack cocaine. Thus, we find that, after removing the improper testimony, the State's evidence was sufficient to support the conviction beyond a reasonable doubt.

Further, we do not believe that the improper evidence had any prejudicial effect on the jury. First, Officer Hunter did not actually state that he identified Mr. Sharp from mugshots. Officer Hunter stated that he looked at mugshots. Second, Officer Hunter did not state that Mr. Sharp was previously incarcerated. Officer Hunter merely alluded to the fact that Officer Bills had worked in jails years ago. Third, the improper evidence was not responsive to the question asked. The State merely asked Officer Hunter if he made an identification of Mr. Sharp; not how he was able to make an identification. Finally, there was no further testimony that might suggest Mr. Sharp was previously convicted of a crime and was incarcerated; nor, did the State comment on this matter during its closing argument.

Our decision to find Officer Hunter's comments harmless error is consistent with our resolution of a similar issue in the case of *State v. Compton*, 167 W.Va. 16, 277 S.E.2d 724 (1981). In *Compton*, the defendant was convicted by a jury of being a principal in the second degree to the crime of breaking and entering. One of the issues raised on appeal was that the trial court erred in not granting the defendant's motion for a mistrial. The mistrial was sought because the State elicited testimony from a defense witness, which indicated that, at the time of the crime, the defendant was serving weekends in jail. We found no error in the denial of the motion for a mistrial explaining as follows:

We cannot conclude, under the particular facts of this case, that the court abused its discretion in refusing to declare a mistrial on the basis of William Fox's testimony. The answer was given by a defense witness and was not directly responsive to the prosecutor's question and even after the answer was given, the State did not pursue a line of questioning in connection with why the defendant was spending his weekends in jail. Also, the answer was in such general terms that, in itself, it did not

---

11. The trial court informed Mr. Sharp that, because the comments were not responsive to the question asked and the matter was not elaborated upon, a cautionary instruction might draw unnecessary attention to the issue.

convey what type of crime the defendant had been convicted of, if any. Furthermore, the State made no attempt to place any emphasis on the witness' answer and no mention of it was made in the State's closing argument.

Even if we were to find that the court had abused its discretion in allowing the answer, its admission would be harmless error under the standard this Court formulated in Syl. pt. 2 of *State v. Atkins,* [163 W.Va. 502], 261 S.E.2d 55 (1979).

*Compton,* 167 W.Va. at 20–21, 277 S.E.2d at 727–728.

## IV.

## CONCLUSION

We affirm the circuit court's order sentencing Mr. Sharp to not less than two nor more than thirty years imprisonment as a result of his convictions on one count of delivery of a controlled substance.

Affirmed.