**FILED**

**January 12, 2022**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 20-0977** (Marion County CC-24-2020-F-15)

**Brian Randall Gatto,**
**Defendant Below, Petitioner**

### MEMORANDUM DECISION

Petitioner Brian Randall Gatto, by counsel J. Bryan Edwards and C. Anthony Gutta III, appeals the Circuit Court of Marion County's November 25, 2020, order sentencing him to not less than twenty-five nor more than one hundred years of incarceration for his first-degree sexual assault conviction; not less than ten nor more than twenty years for each of his four sexual abuse by a parent, guardian, custodian or person in a position of trust to a child convictions; and not less than five nor more than twenty-five years for each of his two first-degree sexual abuse convictions. Respondent State of West Virginia, by counsel Patrick Morrisey and Mary Beth Niday, filed a response. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner was indicted on February 6, 2018 ("first indictment"), for two counts of first-degree sexual assault; four counts of sexual abuse by a parent, guardian, custodian or person in a position of trust to a child; and two counts of first-degree sexual abuse. The matter was assigned Case Number 18-F-43. During the pendency of that proceeding, the circuit court granted petitioner's request for his victim's mental health and counseling records and ordered the State "to obtain the full and complete mental health and counseling records of the alleged victim and have the same served upon the [c]ourt *under seal*" for in camera review. Following its in camera review of the received records, the court concluded that they were discoverable and permitted them to be reviewed by petitioner with his counsel and an appropriate expert. In addition, Amy Burdette and Family Services were later specifically ordered to provide their records of the victim's treatment to the court under seal.

1

In January of 2019, the parties jointly tendered a proposed order continuing trial and charging petitioner with the continuance of the current term of court to the February of 2019 term "because [petitioner] is seeking the medical records of the victim in this matter," which the court entered.

Later in 2019, petitioner moved to dismiss his first-degree sexual assault charges. First, the indictment specified a date range within which the alleged sexual assaults occurred that would place the victim between six and thirteen years old. As first-degree sexual assault is defined to occur when the perpetrator "being fourteen years old or more, engages in sexual intercourse or sexual intrusion with another person who is younger than twelve years old and is not married to that person," petitioner argued that the indictment was fatally flawed and that those counts must be dismissed. W. Va. Code § 61-8B-3(a)(2). Petitioner also argued that the grand jury was not provided with evidence to support that crime because Sergeant Brian Stewart of the Fairmont City Police Department, who testified before the grand jury, never testified to any sexual intercourse and/or sexual intrusion. In a separate motion, petitioner also moved to dismiss the counts charging first-degree sexual abuse because the indictment set forth the incorrect statute and because, within the date range specified in the indictment, the victim was alleged to be between six and thirteen years old. Thus, for the same reason petitioner argued the first-degree sexual assault charges should be dismissed, he urged dismissal of the first-degree sexual abuse charges.

At a hearing on petitioner's motions to dismiss, the court dismissed the first-degree sexual assault charges, finding that Sergeant Stewart "didn't testify there was any penetration. I think he said or testified that it's alleged that [petitioner] put his hand on the child's vagina. There's no suggestion in Officer Stewart's direct testimony that there's any penetration." The court was "less concerned" about the first-degree sexual abuse charges, and it was "less concerned about the date line involved," so it denied petitioner's motion to dismiss the first-degree sexual abuse charges.

In November of 2019, the State moved to dismiss the first indictment without prejudice because it "no longer wishe[d] to prosecute this case." The court ordered the case dismissed without prejudice.

On February 3, 2020, petitioner was again indicted ("second indictment") for two counts of first-degree sexual assault (Counts I and III); four counts of sexual abuse by a parent, guardian, custodian or person in a position of trust to a child (Counts II, IV, VI, and VIII); and two counts of first-degree sexual abuse (Counts V and VII). By agreed order, "all motions, arguments, filings, and the entirety of the [c]ourt file" in Case Number 18-F-43 was "transferred and incorporated within" the new case (the instant case), assigned Case Number 20-F-15.

Petitioner moved to dismiss Counts I and III (first-degree sexual assault) of the second indictment, arguing that Sergeant Stewart falsely testified that the victim, in an interview with the Marion County Child Advocacy Center ("CAC"), said that petitioner penetrated her vagina with his fingers. Petitioner stated that the victim, in fact, answered "no" when asked whether petitioner had ever penetrated her vagina. As the grand jury was not presented with any other evidence that petitioner engaged in sexual intercourse and/or sexual intrusion, petitioner argued that the first-degree sexual assault charges should be dismissed.

The court denied petitioner's motion to dismiss the first-degree sexual assault charges. In its order, the court recounted that it conducted an in camera review of the CAC interview and the grand jury transcript. The court found that petitioner

> failed to demonstrate a *prima facie* case of "willful, intentional fraud" on the part of [Sergeant] Stewart with regard to his testimony to the grand jury on February 3, 2020, that the alleged victim disclosed in her CAC interview that when the [petitioner] "put his hand down her pants his fingers would penetrate her vagina."

The court noted that "the CAC interviewer's questions to the alleged victim were not probing, the child was not under oath and the child's disclosures were not subject to cross examination." As a result, the court found that whether the alleged victim's disclosure during her CAC interview that petitioner "tried to [digitally penetrate her vagina] but I started crying because it hurt" satisfies the legal definition of "penetration" was a question of fact to be decided by the jury, inasmuch as "any penetration, however slight, of the labia or external lips of the vulva of the female is all that i[s] necessary." Syl. Pt. 1, in part, *State v. Vance*, 146 W. Va. 925, 124 S.E.2d 252 (1962).

Petitioner's three-day jury trial began on August 5, 2020. The jury heard testimony from the investigating officers, the victim, one of the victim's therapists, the director of the CAC, and petitioner before beginning its deliberations on the second day of trial.[1] When the jury appeared on the morning of the third day to resume their deliberations, the court informed the jury that the thumb drive containing the victim's CAC interview was missing from the jury room. The jurors were placed under oath and asked whether "anybody t[ook] it home last night inadvertently or otherwise?" No one acknowledged removing the thumb drive from the jury room. The court remarked, "Okay. We have no explanation." A replacement thumb drive was provided to the jury, and it resumed its deliberations.

Once the jury was in the jury room, petitioner moved for a mistrial. Petitioner "appreciated" the fact that an inquiry was made into the disappearance of the exhibit, but he argued that it "could have been taken home, viewed by someone, viewed by them and their family members or things of that nature, that could have brought forth, I guess, deliberations outside of the jury room." The court, finding that it "cannot presume any impropriety insofar as the jurors were all placed under oath" and "[n]one of them admitted to having removed or having possession of the thumb drive," denied petitioner's motion. The court also pointed out that the interview was "an exhibit they would have seen in the jury room anyway."

Following their deliberations, the jury found petitioner guilty of one count of first-degree sexual assault (Count I); four counts of sexual abuse by a parent, guardian, custodian or person in a position of trust to a child (Counts II, IV, VI, and VIII); and two counts of first-degree sexual abuse (Counts V and VII). Petitioner was acquitted of the first-degree sexual assault charged in Count III of the second indictment.

---

[1] At the end of the second day of trial, the jury submitted a note to the court asking, "What happens when we are locked 11 to 1?" The court and parties agreed that the jurors should be encouraged to reach an agreement under *Allen v. United States*, 164 U.S. 492 (1896); sent home for the evening; and permitted to resume deliberating the following morning.

3

Petitioner moved for a new trial. He argued that "it was recently discovered the State . . . failed to comply with two (2) prior Orders of the court and failed to provide relevant medical records." In consulting with the State prior to trial to confirm that all medical records had been obtained and produced, the State asserted that the only records obtained were those from two hospitals not at issue. Petitioner stated that he had "recently discovered," however, that Amy Burdette maintained a file containing mental health and counseling records of the victim. Further, Ms. Burdette reportedly informed petitioner that no one from the State had contacted her to obtain those records or provided her with the circuit court's order directing her to provide the records.

The court denied petitioner's motion for a new trial. It noted that

both the defense and the [S]tate were aware that the child had seen Ms. Burdette and those records had been requested and not received. The [c]ourt reviewed the records after the trial when this was brought up initially by [petitioner's] motion for a new trial. I didn't find anything exculpatory in those records, nor did I find anything that was inconsistent with the information that was contained in her other counseling or mental health records.

"So," the court continued, "I'm not satisfied that there would be any different outcome in this case were the records received prior to trial and provided to the defense."

Petitioner was sentenced to not less than twenty-five nor more than one hundred years of incarceration for his first-degree sexual assault conviction (Count I); not less than ten nor more than twenty years for each of his four sexual abuse by a parent, guardian, custodian or person in a position of trust to a child convictions (Counts II, IV, VI, and VIII); and not less than five nor more than twenty-five years for each of his two first-degree sexual abuse convictions (Counts V and VII). The court further ordered that petitioner's sentences for first-degree sexual assault and two counts of sexual abuse by a parent, guardian, custodian or person in a position of trust to a child (Counts I, II, and IV) run concurrently; that petitioner's sentences for one first-degree sexual abuse conviction and one sexual abuse by a parent, guardian, custodian or person in a position of trust to a child conviction (Counts V and VI) run concurrently but consecutive to the sentences imposed for Counts I, II, and IV; and that the sentences for the remaining first-degree sexual abuse and sexual abuse by a parent, guardian, custodian or person in a position of trust to a child convictions (Counts VII and VIII) run concurrently with Counts I and II. It is from the court's sentencing order that petitioner appeals.

Petitioner raises six assignments of error on appeal. In his first, he argues that the circuit court wrongfully charged him with the continuance to the February 2019 term of court. He argues that the State failed to provide the discovery ordered by the court, which he later identifies generally as "mental health and counseling records," so the continuance should not have been charged against him. Petitioner further asserts that the error resulted in a deprivation of his right to a speedy trial.

West Virginia Code § 62-3-21 "constitutes the legislative pronouncement of our speedy trial standard under Article III, Section 14 of the West Virginia Constitution." Syl. Pt. 1, in part, *Good v. Handlan*, 176 W. Va. 145, 342 S.E.2d 111 (1986). Under that statute,

4

when an accused is charged with a felony or misdemeanor and arraigned in a court of competent jurisdiction, if three regular terms of court pass without trial after the presentment or indictment, the accused shall be forever discharged from prosecution for the felony or misdemeanor charged unless the failure to try the accused is caused by one of the exceptions enumerated in the statute.

Syl. Pt. 1, in part, *State v. Damron*, 213 W. Va. 8, 576 S.E.2d 253 (2002). One such enumerated exception is "a continuance granted on the motion of the accused," West Virginia Code § 62-3-21, and we have also found that a term continued "by agreement of the parties . . . cannot be counted." *Good*, 176 W. Va. at 153, 342 S.E.2d at 118. Although petitioner claims that he ultimately did not receive the discovery he sought, the fact remains that petitioner and the State jointly moved to continue trial until the next term of court, and the joint proposed order charged petitioner with the continuance. Because the term was continued by agreement of the parties, and because the parties further agreed that petitioner would be charged with the continuance, we find no error in the court charging petitioner with the continuance.

In petitioner's second assignment of error, he argues that the court erred in denying his motion to dismiss the second indictment. Petitioner claims that he demonstrated that Sergeant Stewart falsely testified before the grand jury that petitioner digitally penetrated the victim. Petitioner maintains that the officer never spoke with the victim and had only watched the victim's CAC interview, during which she purportedly denied digital penetration, so there was no evidence establishing first-degree sexual assault. *See* Syl. Pt. 7, *State ex rel. Pinson v. Maynard*, 181 W. Va. 662, 383 S.E.2d 844 (1989) ("In reviewing the evidence for sufficiency to support the indictment, the court must be certain that there was significant and material evidence presented to the grand jury to support all elements of the alleged criminal offense.").

This Court's standard of review concerning a motion to dismiss an indictment is, generally, *de novo*. However, in addition to the *de novo* standard, where the circuit court conducts an evidentiary hearing upon the motion, this Court's "clearly erroneous" standard of review is invoked concerning the circuit court's findings of fact.

Syl. Pt. 1, *State v. Carter*, 232 W. Va. 97, 750 S.E.2d 650 (2013) (citation omitted). Additionally, "[e]xcept for willful, intentional fraud the law of this State does not permit the court to go behind an indictment to inquire into the evidence considered by the grand jury, either to determine its legality or its sufficiency." *Pinson*, 181 W. Va. at 663, 383 S.E.2d at 845, Syl. Pt. 2 (citation omitted).

We begin by observing that petitioner failed to include both the transcript of the grand jury proceedings and the victim's CAC interview in the appendix record. Rule 7 of the West Virginia Rules of Appellate Procedure directs a petitioner to

prepare and file an appendix containing:

. . . .

5

(5) Material excerpts from official transcripts of testimony or from papers in connection with a motion. Such excerpts must contain all the testimony or averments upon which the petitioner relies and upon which it may be reasonably assumed the respondent will rely. . . .

(6) Copies of critical exhibits, including photographs and maps, to the extent practicable; . . . [and]

   . . . .

(8) Other parts of the record to which the parties wish to direct the Court's attention.

W. Va. R. App. P. 7(d). A petitioner's brief, in turn, "must contain appropriate and specific citations to the record on appeal," and this "Court may disregard errors that are not adequately supported by specific references to the record on appeal." W. Va. R. App. P. 10(c)(7). Finally,

> [a]n appellant must carry the burden of showing error in the judgment of which he complains. This Court will not reverse the judgment of a trial court unless error affirmatively appears from the record. Error will not be presumed, all presumptions being in favor of the correctness of the judgment.

Syl. Pt. 4, *State v. Myers*, 229 W. Va. 238, 728 S.E.2d 122 (2012) (citations omitted).

Because petitioner failed to include the grand jury transcript and the victim's CAC interview, and because this failure consequently precluded him from appropriately and specifically citing to the claimed error, the Court would be justified in declining to consider this assignment of error. Nevertheless, we note that the circuit court conducted a hearing on petitioner's motion to dismiss the indictment, and, in connection with that hearing and petitioner's motion, it reviewed the grand jury transcript and the CAC interview. The court recounted that the victim disclosed that petitioner "tried to [digitally penetrate her vagina] but I started crying because it hurt." The court further found that petitioner had not established "willful, intentional fraud" with respect to Sergeant Stewart's testimony because "'[s]exual intrusion' means any act between persons involving penetration, *however slight*, of the female sex organ." W. Va. Code § 61-8B-1(8) (emphasis added). In light of these findings, which petitioner has failed to demonstrate are clearly erroneous, we find that the court did not err in denying petitioner's motion to dismiss the indictment.

Next, petitioner's third assignment of error challenges the court's denial of his motion for a mistrial following the discovery that the thumb drive containing the victim's CAC interview was missing from the jury room. Petitioner claims that "[e]vidence does not simply vanish without some third-party interference," and "an unknown or outside jury had or could have had the opportunity, the Court will never know, to change a juror(s) opinion as to whether the [p]etitioner should be found guilty [of] the indicted charges."

We review the circuit court's denial of petitioner's motion for a mistrial for an abuse of discretion. *State v. Sharp*, 226 W. Va. 271, 273, 700 S.E.2d 331, 333 (2010). Further, "[a] trial court is empowered to exercise this discretion only when there is a 'manifest necessity' for

6

discharging the jury before it has rendered its verdict." *State v. Williams*, 172 W. Va. 295, 304, 305 S.E.2d 251, 260 (1983).

Although juror misconduct "prejudicial to the complaining party[] is sufficient reason to direct a mistrial," Syl. Pt. 1, in part, *State v. Trail*, 236 W. Va. 167, 778 S.E.2d 616 (2015), "[m]isconduct on the part of the jury . . . is not presumed but must be fully proved by the moving party." *Id.* at 175, 778 S.E.2d at 624 (citation omitted). "[T]he mere allegation of juror misconduct is insufficient," and "there must be proof that some improper event has occurred." *Id.*; *see also State v. Woods*, No. 18-1069, 2020 WL 1674252 (W. Va. Apr. 6, 2020)(memorandum decision) (finding no error in the court's denial of a motion for a mistrial on the grounds of juror misconduct where there was no evidence of any misconduct). Here, the court placed the jurors under oath and asked whether anyone took the thumb drive from the jury room. No one indicated that they had done so, and there was no proof of any improper conduct. Without such proof, there was no basis for declaring a mistrial. The court, therefore, did not abuse its discretion in denying petitioner's motion for a mistrial.

Petitioner argues in his fourth assignment of error that the court erred in denying his motion for a new trial. Petitioner asserts that he discovered after the trial that Ms. Burdette possessed mental health and counseling records of the victim. Petitioner characterizes these records as "newly discovered;" claims that the victim's mental health treatment records "were a focal point" of the parties' respective cases; and concludes, without citing any support, that the evidence was "not merely cumulative," "substantial to change the results of a second trial," and "not to impeach a witness." Further, he highlights that the State was ordered to obtain all of the victim's mental health treatment records.

We review the findings and rulings made by a circuit court with regard to a motion for a new trial under the following standard:

> We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. Pt. 3, in part, *State v. Vance*, 207 W. Va. 640, 535 S.E.2d 484 (2000). A new trial on the ground of newly discovered evidence will not be granted

> unless the case comes within the following rules: (1) The evidence must appear to have been discovered since the trial, and, from the affidavit of the new witness, what such evidence will be, or its absence satisfactorily explained. (2) It must appear from facts stated in his affidavit that plaintiff was diligent in ascertaining and securing his evidence, and that the new evidence is such that due diligence would not have secured it before the verdict. (3) Such evidence must be new and material, and not merely cumulative; and cumulative evidence is additional evidence of the same kind to the same point. (4) The evidence must be such as ought to produce an opposite result at a second trial on the merits. (5) And the new trial will generally be refused when the sole object of the new evidence is to discredit or impeach a witness on the opposite side.

7

Syl. Pt. 1, in part, *State v. King*, 173 W. Va. 164, 313 S.E.2d 440 (1984). "All five factors must be proven before a new trial will be awarded." *Anstey v. Ballard*, 237 W. Va. 411, 422, 787 S.E.2d 864, 875 (2016).

Petitioner fails to demonstrate that he was entitled to a new trial on the ground of newly discovered evidence. In his motion for a new trial, petitioner claimed to have "recently discovered, after the jury's verdict, that Amy Burdette does have a file containing mental health and counseling records of [the victim]." But the records could not have been discovered since the trial because the parties sought their production *before* trial. And petitioner was not diligent in securing this evidence because, when the records were not forthcoming following entry of the order directing their production, petitioner did not move to compel their production or otherwise seek to secure the records. Further, at the hearing on petitioner's motion for a new trial, the court indicated that it "reviewed the records after the trial when this was brought up initially," and it "didn't find anything exculpatory in those records, nor did [the court] find anything that was inconsistent with the information that was contained in her other counseling or mental health records." The court ultimately was not convinced "that there would be any different outcome in this case were the records received prior to trial and provided to the defense." Aside from petitioner's conclusory statements that the records were, in fact, "new evidence and not merely cumulative" and "substantial to change the results of a second trial," he offers no explanation or analysis to bring the circuit court's contrary conclusions into dispute. As we have repeatedly reminded litigants, a "skeletal" argument that is "nothing more than an assertion[] does not preserve a claim." *State v. Benny W.*, 242 W. Va. 618, 633, 837 S.E.2d 679, 694 (2019) (citation omitted). Consequently, petitioner has failed to demonstrate that the court abused its discretion in denying his motion for a new trial, and we find no error.[2]

Moving to petitioner's fifth assignment of error, he claims that there was insufficient evidence to support his convictions. Although petitioner claims that he "is aware that this Court has held that a conviction for sexual assault can be based solely on the testimony of the alleged victim," he nevertheless takes issue with the fact that "in this case the only evidence of any elicit conduct against the [p]etitioner was that of the alleged victim." Petitioner argues that the victim disclosed the sex crimes four to five years after they occurred, that the victim was in counseling, that the victim did not discuss the sexual assault during her counseling, and that she even denied abuse when questioned by treatment providers.

It is well established that "[a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden," Syl. Pt. 3, in part, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995), as this Court's review is "highly deferential to the jury's verdict." *State v. Thompson*, 240 W. Va. 406, 414, 813 S.E.2d 59, 67 (2018). In considering such challenges, this Court

> must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long

---

[2] We further note that petitioner failed to provide the affidavits described in *King*. 173 W. Va. at 164, 313 S.E.2d at 441, Syl. Pt. 1, in part.

8

as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.

*Guthrie*, 194 W. Va. at 663, 461 S.E.2d at 169, Syl. Pt. 3, in part. Importantly, and as petitioner acknowledges, "[a] conviction for any sexual offense may be obtained on the uncorroborated testimony of the victim, unless such testimony is inherently incredible, the credibility is a question for the jury." Syl. Pt. 5, *State v. Beck*, 167 W. Va. 830, 286 S.E.2d 234 (1981).

Notably, petitioner does not contend that the State failed to produce evidence in support of an element it had the burden to prove. Rather, petitioner takes issue with the fact that the "only evidence" came from the victim, despite simultaneously acknowledging that his convictions could be obtained on the victim's uncorroborated testimony alone, so long as her testimony was not "inherently incredible." *Id.* Petitioner does not go so far as to allege that the victim's testimony was "inherently incredible"; rather, he merely identifies issues on which she was cross-examined extensively. As "[c]redibility determinations are for a jury and not an appellate court," it was within the jury's province to assess the credibility of the victim's testimony on those issues. *Guthrie*, 194 W. Va. at 663, 461 S.E.2d at 169, Syl. Pt. 3, in part. Further, in evaluating the sufficiency of the evidence, this Court "must credit all . . . credibility assessments that the jury might have drawn in favor of the prosecution." *Id.* Accordingly, petitioner has not satisfied his heavy burden of demonstrating that there was no evidence from which the jury could find him guilty beyond a reasonable doubt.

In petitioner's sixth and final assignment of error, he challenges his sentence, claiming that it amounts to cruel and unusual punishment in violation of Article III, Section 5 of the West Virginia Constitution and the Eighth Amendment to the United States Constitution.[3] He highlights that he had no prior criminal history; maintained employment; had obtained a security clearance for his job; and was provided with a treatment plan by a licensed psychologist, who also indicated that petitioner posed a low risk of reoffending. Petitioner argues that he would have been given a lighter sentence had he been convicted of first-degree murder with a recommendation of mercy.

"The Supreme Court of Appeals reviews sentencing orders, including orders of restitution made in connection with a defendant's sentencing, under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands." Syl. Pt. 1, *State v. Wasson*, 236 W. Va. 238, 778 S.E.2d 687 (2015). But "[w]hile our constitutional proportionality standards theoretically can apply to any criminal sentence, they are basically applicable to those sentences where there is either no fixed maximum set by statute or where there is a life recidivist statute." Syl. Pt. 4, *Wanstreet v. Bordenkircher*, 166 W. Va. 523, 276 S.E.2d 205 (1981). "Sentences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review." Syl. Pt. 4, *State v. Goodnight*, 169 W. Va. 366, 287 S.E.2d 504 (1982).

---

[3] Technically, petitioner combined what we have delineated as his fifth and sixth assignments of error into one assignment of error. Because the errors alleged are distinct, we have separated them for ease of review.

The crimes of which petitioner was convicted have maximum terms of incarceration set by statute, petitioner's sentences were within those statutory limits, and he was not sentenced as a recidivist. *See* W. Va. Code §§ 61-8B-3(c), 61-8D-5(a), and 61-8B-7(c). Additionally, petitioner does not assert that his sentences were based on an impermissible factor. His sentences are, therefore, not subject to appellate review.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** January 12, 2022

**CONCURRED IN BY:**

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice William R. Wooton